Submitted on briefs September 7, 1943; argued on order of the
Court January 25; reversed February 29, 1944

# BEHNKE-WALKER BUSINESS COLLEGE *v.*
# MULTNOMAH COUNTY ET AL.

(146 P. (2d) 614)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Frank S. Sever,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for appellants.

*W. L. McFarling,* of Portland (G. G. Smith, of Portland on the brief), for respondent.

*I. H. Van Winkle,* Attorney General, and *James G. Smith,* Assistant Attorney General, for State Tax Commission, *amicus curiae.*

BAILEY, C. J. The question before us for decision is whether or not the real and personal property owned and used by the plaintiff, Behnke-Walker Business College, a corporation, is subject to taxation. The real property involved consists of two lots in Portland, on which there is a three-story brick and concrete building, one hundred by one hundred feet in size, especially designed and used for carrying on therein the plaintiff's business, the conduct of "a school of the type commonly called a business college," in which are taught "bookkeeping, shorthand, English, arithmetic, business administration and kindred subjects". With the exception of one room, approximately twelve

by twenty feet in size, the entire building is occupied by the plaintiff. The personal property consists of "the usual furniture and equipment for teaching the usual business subjects taught in the institution, including books of reference".

Tuition fees are charged by the plaintiff to its students, varying "in amount in accordance with the courses or number of courses or subjects taken by such students." It is admitted by the plaintiff in its supplemental brief and was also stated by its counsel in oral argument, that the plaintiff is a corporation organized for profit.

From a decree declaring the plaintiff's property exempt from taxation the defendants have appealed.

The plaintiff asserts that the property, real and personal, owned and used by it in the conduct of its business college is not subject to taxation, because of the provision of subdivision 3, § 110-201, O. C. L. A., which exempts from taxation the "personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated".

It is the defendants' contention that the real and personal property involved in this litigation is not exempt from taxation under subdivision 3, § 110-201, *supra,* for the following reasons: (1) that the subdivision mentioned has no application to the property of a corporation such as the plaintiff, organized and operated for profit to its stockholders; and (2) that the Behnke-Walker Business College is not a literary, benevolent, charitable or scientific institution within the meaning of that subdivision.

■ Ever since its enactment by the territorial legislature in 1854, subdivision 3 of § 110-201, *supra*, has remained unamended, except that the word "territory" therein has been changed to "state": Deady's Code, page 894. In order to ascertain the intention of the territorial legislature in passing the law of which this is a part, it is well to consider the conditions existing at the time of its enactment.

During territorial days corporations were created by special legislative grants to designated persons and their associates. A grant so made conferred the right to be a corporation and to exercise specified corporate powers. Prior to the enactment of the exemption statute now under consideration, the territorial legislature had by special laws granted many corporate franchises. Those were of two general classes, one of which comprised corporations commonly known as capital stock companies, created for the purpose of carrying on designated businesses for the profit of stockholders. Among such corporations were the Umpqua River Navigation and Manufacturing Company, which had for its purpose the building of dams and locks on the Umpqua river to render it suitable for navigation (Special Laws 1853-1854, page 14); the Santiam River Bridge Company, incorporated for the purpose of constructing and operating a bridge across the Santiam river (Special Laws 1853-1854, page 19); and the Oregon City Water Company, created to supply Oregon City with water (Special Laws 1853-1854, page 78). Those and similar corporations were authorized to issue and sell corporate stock.

The other class of corporations for which special franchises were granted consisted of what might be termed eleemosynary or non-profit organizations.

Among them were institutions of learning, such as Oregon Academy at Lafayette (Laws 1851-1852, special laws, page 25); Willamette University (Laws 1852-1853, special laws, page 27); Rickreall Academy (Special Laws 1853-1854, page 10); Union Academy (Special Laws 1853-1854, page 25); Tualatin Academy and Pacific University (Special Laws 1853-1854, page 30); Santiam Academy (Special Laws 1853-1854, page 37); and Corvallis Seminary (Special Laws 1853-1854, page 52). During the session of the legislature in which the exemption statute was passed, charters were granted to the five institutions last named. Subsequently, but prior to the admission of the territory into statehood, many other like corporate franchises were granted.

There is a similarity of language in all the special charters to institutions of learning. In each instance certain designated individuals and their associates and successors are "declared to be a body corporate and politic in law, by the name and style of the 'trustees' " of the institution incorporated. The expressed purpose of granting such franchises was to establish a seminary, academy or other institution of learning in each case. In many of the charters there is the provision that "no part of the resources" of the institution "shall ever be used for any other than educational purposes herein contemplated". In other charters there are similar expressions, although not in precisely the same language. All such corporations are authorized to acquire by purchase, donation or gift, property, real, personal or mixed, necessary to carry into effect the objects for which they were incorporated. In none of the charters is there any provision for the issuance of capital stock or any intimation that the

trustees or their associates shall receive any profit from the conduct of the corporation.

The creation of private corporations by special laws came to an end when this state adopted its constitution, which provides that, ''Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes'': article XI, § 2, Deady's Code, page 119. In 1862 the legislature passed a general law providing for the organization of corporations for profit, empowered to issue and sell capital stock: Deady's Code, page 658. Two years later the legislature passed ''An act to provide for the incorporation of churches and religious, benevolent, literary and charitable societies'': Deady's Code, page 632. No provision was made in the latter act or its amendments for the issuance of capital stock or the distribution of profits to the incorporators or members. That act as thereafter amended was last codified as §§ 77-401 to 77-408, inclusive, O. C. L. A. It was repealed in 1941 and superseded by chapter 462, Oregon Laws 1941, entitled in part, ''An act relating to the organization and operation of non-profit corporations''.

In pointing out the characteristics of non-profit corporations as distinguished from those of corporations organized for gain, this court in *Wemme v. First Church of Christ, Scientist*, 110 Or. 179, 199, 219 P. 618, 223 P. 250, with reference to the same corporation, The E. Henry Wemme Endowment Fund, that was involved in *Carson v. Schulderman*, 79 Or. 184, 154, P. 903, observed:

''A corporation is purely a creature of statute. It can exercise no power unless the statute expressly or by necessary implication authorizes it.

Without such statutory power a corporation can not have or issue capital stock. In this state corporations organized for profit are required by statute to have capital stock in order to enable them to carry out the objects and purposes for which they are organized, but corporations organized for charitable purposes are not authorized or permitted by statute to have or to issue capital stock. The E. Henry Wemme Endowment Fund is an eleemosynary corporation and the statute did not confer the power for it to have or to issue capital stock. The issuance by it of capital stock, although directed by the testator, was unauthorized by law and was wholly unnnecessary to aid in carrying out the purposes of the charity".

The following excerpt from 4 Thompson on Corporations, second edition, § 3402, was quoted by the court with approval in that opinion:

"From their very nature religious, educational, charitable and fraternal and social organizations are neither intended nor authorized to have capital stock. Generally, the necessity and authority for capital stock is limited to corporations that are intended for the financial benefit of the members, while it is not required or authorized for those not so intended."

Subdivision 3 of § 110-201, O. C. L. A., on which the plaintiff relies, applies only to literary, benevolent, charitable and scientific institutions incorporated within this state; and the inference is strong that it was intended to affect only such of those institutions as were created by special acts of the territorial legislature or incorporated under general laws relating specifically to literary, benevolent, charitable and scientific corporations as distinguished from private organizations for profit.

Section 4 of the act of 1854, of which section subdivision 3 was a part, as printed at page 894 of Deady's Code (which was published in 1866, after Oregon had become a state) and not thereafter amended until 1903, reads as follows:

"Sec. 4. The following property shall be exempt from taxation:

"1. All property, real and personal, of the United States, and of this state;

"2. All public or corporate property of the several counties, cities, villages, towns and school districts in this state, used or intended for corporate purposes;

"3. The personal property of all literary, benevolent, charitable and scientific institutions, incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated;

"4. All houses of public worship, and the lots on which they are situated, and the pews or slips, and furniture therein, and all burial grounds, tombs and rights of burial; but any part of any building, being a house of public worship, which shall be kept or used as a store or shop, or for any other purpose, except for public worship or for schools, shall be taxed upon the cash valuation thereof the same as personal property, to the owner or occupant, or to either; and the taxes shall be collected thereon in the same manner as taxes on personal property;

"5. All public libraries, and the real or personal property belonging to or connected with the same;

"6. The property of all Indians, who are not citizens, except land held by them by purchase;

"7. The personal property of all persons, who by reason of infirmity, age or poverty, may, in the opinion of the assessor, be unable to contribute toward the public charges."

Section 1 of article IX of the Oregon constitution as originally adopted was as follows:

"The legislative assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

That section remained unamended until 1917, at which time the provision relating to "specially exempted" property was eliminated.

■ We shall now consider whether the territorial legislature by the use of the words "literary and scientific" in subdivision 3, *supra,* intended to exempt from taxation all the personal property of literary and scientific corporations and their real property used for corporate purposes, regardless of whether such institutions be conducted for the profit of their stockholders or not. It is a familiar rule of construction that "the coupling of words together shows that they are to be understood in the same sense": *Neal v. Clark,* 95 U. S. 704, 24 L. Ed. 586; or, as expressed in *Southern Pacific Company v. State Corporation Commission,* 39 Ariz. 1, 3 P. (2d) 518, "Associated words explain and limit each other." See also, in this connection: *O'Malley v. Continental Life Insurance Co.,* 335 Mo. 1115, 75 S. W. (2d) 837; 25 R. C. L., Statutes, § 239, page 995; and 2 Sutherland on Statutory Construction, third edition, § 4908. In subdivision 3, *supra,* the words "scientific and literary" are associated with "benevolent and charitable".

In *Board of Assessors v. Garland School of Home Making,* 296 Mass. 378, 6 N. E. (2d) 374, the phrase

"literary, benevolent, charitable and scientific institutions", used in the tax-exemption statute of Massachusetts, was interpreted by the supreme court of that state thus:

"The only corporations falling within the class described by the words quoted are corporations which are 'charitable' in the broad sense in which that word is used in the law relating to public charities. * * * The words descriptive of exempt institutions are to be construed together. The word 'benevolent' used in connection with the word 'charitable' is synonymous therewith. Molly Varnum Chapter, D. A. R., v. Lowell, 204 Mass. 487, 492, 90 N. E. 893, 26 L. R. A. (N. S.) 707. And these words are not restricted to relief of the poor or sick but, subject to the limitation above stated, bring institutions of a general charitable nature within the scope of the exemption": citing numerous authorities. "While the words 'literary' and 'scientific' show that the exemption given by the statute is not restricted to institutions having the narrow charitable purpose of relief of the poor or sick, they are to be interpreted, like the word 'benevolent' in the light of their use in connection with the word 'charitable' and do not extend the exemption to literary or scientific institutions which are not in the nature of public charities. This interpretation is in accord with the underlying reason of the exemption, that it is given in return for the performance of functions which benefit the public": citing authorities.

■ The properties enumerated in § 4, *supra,* as exempt from taxation, in other parts of that section than subdivision 3, are those belonging to the United States, the state or some of its agencies, or those devoted to religious, charitable or public use, and in addition the personal property of those who are financially unable to "contribute toward the public

charges." In none of such exemptions is there any intimation that any property used for the private gain of any individual or corporation shall be relieved of taxation. For the purpose of construction, the words "literary" and "scientific" used in subdivision 3 should not be lifted from the context in which they are found, but should be considered in relation to the whole of § 4, *supra* (act of 1854, Deady's Code, page 894). Upon viewing that section in its entirety, it is apparent that the legislature did not intend to exempt from taxation private property used for private profit, and that the only property, public or private, in fact exempted is such as "has been sequestered or devoted to public uses": *Brunswick School v. Greenwich,* 88 Conn. 241, 90 A. 801.

■ There is another reason for holding that the legislature did not intend that property owned by literary or scientific corporations organized and operated for the profit of individual stockholders should be exempted from taxation. Legislation exempting such property when owned by corporations and not when owned by individuals would be discriminatory and unconstitutional.

In *Ward's Seminary v. City of Nashville,* 129 Tenn. 412, 167 S. W. 113, the court considered the question of whether the exemption from taxes of certain property belonging to educational institutions applied to property owned by individuals as well as to that owned by corporations. The court had decided in a previous case that the exemption was limited to corporate property, and in reference to the former ruling the opinion observed:

"This construction can not be adhered to. Such a construction exempts from taxation property be-

longing to corporations for profit, if used for educational purposes, but holds the property of individuals used for identical purposes liable for such taxes. If subsection 2 of section 2, Acts of 1907, be so construed, it would be clearly unconstitutional. The court has recently considered the question of discrimination between individuals and private corporations in the case of State v. Railroad, 124 Tenn. 16, 135 S. W. 773, Ann. Cas. 1912 D 805, where the authorities are reviewed at length. As pointed out in State v. Railroad, there must be some natural and reasonable basis for discrimination in legislation between individuals and corporations. Such classification must have some natural and reasonable basis. No reason whatever has been suggested for a discrimination between an individual and a corporation for profit, both engaged in educational work, and any attempt of the legislature to make such a distinction as between the two in the matter of exemption from taxation would be invalid.''

■ When a statute is susceptible of two constructions, one of which would render it constitutional, and the other, unconstitutional, the court will adopt the former construction. In limiting the statute now under consideration to such scientific or literary corporations only as are not operated for private profit we are upholding its constitutionality. There is a sound basis for exempting from taxation the property of such institutions, as distinguished from the property of individuals: *Waller v. Lane County*, 155 Or. 160, 171, 63 P. (2d) 214.

■■ The burden of taxation ought to fall equally upon all. Statutes exempting persons or property are construed strictly, and an exemption should be denied to exist, unless it be so clearly granted as to be free from reasonable doubt. Such statute will be construed

most strongly against those claiming the exemption: *Hibernian Benevolent Society v. Kelly*, 28 Or. 173, 42 P. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769.

The appellant cites a number of cases holding that property owned by schools and used in their conduct is tax-exempt, regardless of whether the schools are operated for private gain or not. Two of those, from which the plaintiff quotes extensively, are *In re Mountain State College, Inc., Assessment*, 117 W. Va. 819, 188 S. E. 480, and *Board of Commissioners v. Tulsa Business College*, 150 Okla. 197, 1 P. (2d) 351.

In the first case named the statute relating to exemption of property from taxation, as quoted in the opinion of the court, provided that:

> "All property, real and personal, described in this section, and to the extent herein limited, shall be exempt from taxation, that is to say: * * * Cemeteries; property belonging to colleges, seminaries, academies, and free schools, if used for educational, literary or scientific purposes, including books, apparatus, annuities, money and furniture; * * * property used for charitable purposes, and not held or leased out for profit; all real estate * * * used exclusively by any college or university society as a literary hall, or as a dormitory or club room, if not leased or otherwise used with a view to profit; all property belonging to benevolent associations, not conducted for private profit".

The court ruled that the property of the commercial college there involved was exempt from taxation, and quoted as authority therefor one of its earlier decisions, as follows:

> "There is no limitation upon the above exemption for educational purposes by reason of the fact

that the property may be held or leased out for profit, as is true of the case of property used for charitable purposes."

The opinion then stated:

".  .  . The context, exempting several classes of property upon condition that they are not used for profit or private gain, further weakens the claim that a similar qualification was intended as to property belonging to colleges, seminaries, and academies and used for educational, literary, or scientific purposes."

In the Oklahoma case above mentioned, *Board of Commissioners v. Tulsa Business College,* 150 Okla. 197, 1 P. (2d) 351, the statute under consideration exempted among other things:

"Tenth. All property, both real and personal, of scientific, educational and benevolent institutions, colleges or societies, devoted solely to the appropriate objects of these institutions."

The court in that instance decided that the statute specifically exempted all property used exclusively for schools or colleges, and that it was immaterial, in view of the wording of the statute, whether or not the schools or colleges were operated for private gain.

The statute under consideration in *Ward Seminary v. City of Nashville,* supra, exempted from taxation "All property belonging to any religious, charitable, scientific, or educational institutions when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income." In construing that section the court referred to and quoted article 11, § 12, of the Tennessee constitution of 1870, reading as follows:

"Knowledge, learning and virtue, being essential to the preservation of republican institutions,

and the diffusion of the opportunities and advantages of education throughout the different portions of the state being highly conducive to the promotion of this end, it shall be the duty of the General Assembly in all future periods of this government, to cherish literature and science."

With that in mind, the court stated:

"We think, therefore, in view of this constitutional admonition and the necessity of schools, that it was the intention of the legislature to exempt property used in educational work, whether such property was owned and such work conducted by individuals or corporations."

That the exemption applied to property belonging to educational institutions whether or not used for private gain was therein decided.

In *Board of Supervisors v. Gulf Coast Military Academy,* 126 Miss. 729, 89 So. 617, the statute to be construed originally provided that all property belonging to incorporated institutions for the education of youth, used exclusively for that purpose and not for profit, should be exempt from taxation: § 3744, Annotated Code of Mississippi 1892. The phrase "and not for profit" was later eliminated. The court ruled that such amendment by the legislature showed the intention of that body to exempt all property used "exclusively for educational purposes, even though the institution is operated for profit".

The two following cases may be considered together, *State ex rel. v. Johnston,* 214 Mo. 653, 113 S. W. 1083, 21 L. R. A. (N. S.) 171, and *Pitcher v. Miss Wolcott's School Association,* 63 Colo. 294, 165 P. 608, L. R. A. 1917E, 1095. In the former, the constitution of Missouri provided that, "Lots in incorporated cities or towns, or within one mile of the limits of any such

city or town, to the extent of one acre, and lots one mile or more distant from such cities or towns, to the extent of five acres, with the buildings thereon, may be exempted from taxation when the same are used exclusively for religious worship, for schools, or for purposes purely charitable." In the other case the Colorado constitution was thus worded: "Lots, with the buildings thereon, if said buildings were used solely and exclusively for religious worship, for schools, or for strictly charitable purposes, also cemeteries not used or held for private or corporate profit, shall be exempt from taxation, unless otherwise provided by general law."

Both in Missouri and in Colorado the laws exempting property from taxation followed the language of the respective state's constitution. In the cases from both states it was held that the term "schools" was broad enough to include educational institutions operated for profit.

Nebraska has constitutional and statutory provisions similar in many respects to those of the two states last mentioned, and its supreme court has similarly construed them: *Rohrbough v. Douglas County,* 76 Neb. 679, 707 N. W. 1000.

The statute of Minnesota exempts from taxation the property of "All academies, colleges, and universities, and all seminaries of learning": *State v. Northwestern College,* 193 Minn. 123, 258 N. W. 1.

We have hereinbefore referred to most of the authorities cited by the plaintiff in support of its contention that its real and personal property is exempt from taxation. Those which we have not specifically mentioned we have read and considered. Not any of the plaintiff's cases are in point in regard to the question

here before us, for the reason that the constitutions and statutes of the jurisdictions from which they are cited differ materially from the Oregon constitution and statutes on the subject. The cases on which the plaintiff relies stress the fact that by the constitution or the statutes or both, the property of "schools" or other educational institutions is expressly exempted from taxation.

■ The real and personal property which in this suit the plaintiff is seeking to have exempted from taxation is owned and used by the plaintiff for its own profit. It is not owned and used for literary, benevolent, charitable or scientific purposes within the contemplation of subdivision 3 of § 110-201, O. C. L. A.

In *Brunswick School v. Greenwich*, supra, the court said:

". . . The plaintiff's purpose is not the charitable one of devoting its property to the public use, but to devote it to its own use. The investment of capital in the corporation is not an endowment of the capital invested, or of the building in which it is invested, to the public use. Nor does the fact that no dividends have yet been paid, as found by the court, affect the situation."

We have not discussed or considered whether the plaintiff's business college would fall within the definition of a "scientific" or "literary" institution, if owned and used as a business college by a non-profit corporation, inasmuch as it is our conclusion that the plaintiff's property is used for private gain and is therefore taxable.

The decree appealed from is reversed and the suit dismissed. Neither party will recover costs in this court.

[See specially concurring opinion on following page.]

KELLY, J. (Specially concurring.)

I concur in the result attained by the majority of the court, but cannot concur in the reasoning upon which the majority reach that result.

I think that no authority has been cited from a jurisdiction having our statutory provisions that holds the property of a business college to be exempt from taxation. In other words, no authority has been brought to my attention holding that a business college is either a literary or scientific institution. For that reason, I concur with the majority in holding that the decree of the trial court should be reversed.

I do not concur in the holding that the property of a scientific or literary institution is not exempt from taxation unless the institution is not only scientific or literary, but also a nonprofit institution.

It follows that I do not concur in the holding that not only must the institution be a scientific or literary institution and a nonprofit institution in fact, but also must be organized and incorporated pursuant to the statute providing for the organization of nonprofit corporations.

This court has expressly approved the incorporation of a charitable institution under the same section of the statute as that under which defendant in the instant case is incorporated. *Carson v. Schulderman,* 79 Or. 184, 154 P. 903. Until that case is expressly overruled, I am unwilling to concur in the holding that the incorporation of a scientific or literary institution under the profit corporation statute destroys the right of exemption from taxation which that institution would have had if it had been incorporated under the nonprofit corporation statute.

Whatever may have actuated the early legislative assemblies, with reference to the exemption statute, in their consideration of the relative rights thereunder of profit and nonprofit corporations, it is only fair to assume that the members of the legislative assemblies in 1931, 1925 and 1919, were aware of the holding of this court in *Carson v. Schulderman,* supra, and that while the exemption statute was amended at each of those three sessions, no change was made to modify or alter the doctrine of that case which expressly authorized the incorporation of a nonprofit organization under the terms of the profit corporation statute. A subsequent amendment also has been made, but no change appears in that respect. .

In its entirety, the quotation, as employed by the United States Supreme Court in *Neal v. Clark* from Broom's Legal Maxims, is as follows:

"It is a rule laid down by Lord Bacon, that *copulatio verborum indicat acceptationem in eodem sensu,*—the coupling of words together shows that they are to be understood in the same sense. And where the meaning of any particular word is doubtful or obscure, * * * the intention of the party who made use of it may frequently be ascertained and carried into effect by looking at the adjoining words." *Neal v. Clark,* 95 U. S. 704, 708, 709, 24 L. Ed. 586.

The precise question there was whether in the use of the term fraud as one of the grounds for denying a discharge under the bankruptcy act Congress meant constructive fraud or only actual fraud. The federal statute provided that "no debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity

shall be discharged under this act." The United States Supreme Court held that the term fraud as there employed meant actual as distinguished from constructive fraud. It did not hold that to prevent a discharge, it would be necessary to show that not only fraud but embezzlement, defalcation and breach of trust had been committed by the bankrupt in creating the debt.

As I understand the majority in the case at bar, the holding is that in order to be exempt from taxation the institution not only must be scientific or literary but benevolent and charitable also. Not only that, it must be incorporated under the nonprofit corporation statute. I find nothing in *Neal v. Clark,* supra, supporting that holding. Its doctrine, as I understand it, is that in construing ambiguous words, their meaning may be derived from the context. The word fraud could mean merely actual fraud, it could also mean constructive fraud, hence, the ambiguity. I find no such ambiguity in the term scientific institution nor in the term literary institution.

In *Southern Pacific Company v. State Corporation Commission,* 39 Ariz. 1, 3 P. (2d) 518, the applicable rule quoted is:

"Associated words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it."

This quotation is from Black on Interpretation of Laws, (2d Ed.) § 67, page 194.

In the Arizona case, just cited, the question was what classification certain charges for switching by

a carrier should be given. The various switching services were classified as "Intra-plant switching: a switching movement from one track to another within the same plant or industry." "Intra-terminal switching: a switching movement (other than intra-plant switching) from one track to another of the same road within the switching limits of one station or industrial switching district"; and "inter-terminal switching: a switching movement from a track of one road to a track of another road when both tracks are within the switching limits of the same station or industrial switching district."

"The rate for intra-plant switching was fixed at $3.60 per car movement and for intra-terminal and inter-terminal at $7.20 per car movement." The ambiguity or vagueness of meaning which invoked the above quoted canon of construction arose from the use of the terms plant and industry.

In *O'Malley v. Continental Life Insurance Company*, 335 Mo. 1115, 75 S. W. (2d) 837, it is said:

"The legislative intent in the enactment of the law is to be sought and effectuated. This is the rule of first importance in statutory interpretation. To ascertain such intent we invoke as aids such of the auxiliary rules of interpretation as may seem to bear with incidence as direct as may be upon the matter in hand. Briefly stated, these in substance recognize and require that the language of the act be considered [25 R. C. L. § 216, p. 961]; that each word be accorded its ordinary meaning, generally speaking; and that in construing a word or expression of a statute susceptible of two or more meanings the court will adopt that interpretation most in accord with the manifest purpose of the statute as gathered from the context."

In that case the word perfected was under consideration as applied to perfecting an appeal. As shown there, that word had two or more meanings. Moreover, if it is incumbent upon a scientific institution to be a charitable and benevolent institution, why is it not also incumbent upon a charitable and benevolent institution to be both charitable, benevolent, scientific and literary? There is as much vagueness about any one of those terms as about any of the others.

In *Board of Assessors v. Garland School of Home Making*, 296 Mass. 378, 6 N. E. (2d) 374, the court considered G. L. (Mass.) (Ter Ed.) c. 59, § 5, material parts of which are these:

"The following property * * * shall be exempt from taxation: * * * Third, Personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase, except as follows: (a) If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt."

Among other things, the court held that—

"A finding was warranted that none of the 'income or profits of the business' of the taxpayer was 'used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes.'"

The expression from that case appearing in the opinion of the majority merely reflects the same sentiment as the final clause of the Massachusetts statute. In Oregon there is no such statutory qualification. It is my opinion that this court ought not to interpolate such a restrictive clause into the Oregon statute. If it should be there, only the legislative department of government should say so.

The majority opinion cites and quotes from *Ward Seminary for Y. L. v. Mayor, etc., of Nashville,* 129 Tenn. 412, 167 S. W. 113, to the effect that a statute would be unconstitutional if it should exempt property belonging to a corporation for profit, if used for educational purposes; but should hold the property used by individuals liable for such taxes.

I am very reluctant to detour from the issues before us into the realm of unnecessary and inapplicable constitutional construction. No individual is urging the unconstitutionality of the statute under consideration. That question, in my opinion, is an alien and a stranger here, but to me it is not at all difficult to solve. In my opinion, the permanency or probable continuance of an incorporated, scientific or literary institution compared with that of an individual engaged in scientific research and instruction or literary exposition, analysis, preservation and contribution is sufficient to distinguish between such corporations and such individuals and to afford a perfectly justifiable exemption on the part of the former not warranted in the case of the latter.

It may be that I am still chasing nonexistent butterflies when I say that the same criticism, namely, the charge of unconstitutionality may be made of a statute which grants an exemption to a nonprofit

corporation and withholds it from an individual engaged in identically the same class or kind of non-profit activity.

I must repeat that in my opinion these constitutional queries have no proper place in this discussion. At least, I am most unwilling to cast the shadow of doubtful constitutional validity upon the exemption statute in question, not only because of its long continued enforcement which, as stated in the majority opinion, antedates our statehood, but also because of its very obvious aid to progress, enlightenment and culture.

This shadow, instead of being dispelled by the construction given to the statute by the majority, is thereby rendered more pronounced and disturbing. In my opinion, that construction merely adds another discrimination, namely, the discrimination against corporations organized under the profit corporation statute. As I view it, this latter discrimination is impossible to defend without expressly overruling *Carson v. Schulderman,* supra.

In my opinion, the simple question to decide in this case is whether a business college is a scientific or literary institution. There is no question that defendant is incorporated under the laws of this state.

In *Ward Seminary for Y. L. v. Mayor etc., of Nashville,* supra, the question for determination was whether the property of a boarding school for girls was exempt from taxation as that of an educational institution. The complainant was a corporation for profit. Its net earnings or ultimate gains went to its stockholders, not to educational, charitable or religious ends. The Tennessee court held that the portion of its property

which was entitled to immunity from taxation was that portion physically used and actually occupied in educational work.

In a later case the Tennessee court in referring to the Ward Seminary case said:

"If the property owner be a corporation for profit, or an individual, the property must be actually or physically used for one of the privileged purposes in order to be exempt."

In the later case it is also said:

"When its freedom from taxation is to be determined by its actual and physical use, practically the same test is applied to property owned by a corporation for general welfare as is applied to property owned by a corporation for profit or to property owned by an individual. A somewhat more liberal construction is perhaps indulged in regard to exemptions to corporations of the former class but, generally speaking, the test is the same. Memphis Chamber of Commerce v City of Memphis, 144 Tenn. 291, 232 S. W. 73." *State v. Rowan,* 171 Tenn. 612, 106 S. W. 2d 861.

This test, namely, by determining the character of the actual and physical use of the property commends itself to me for at least two reasons.

One of those reasons is that the form of the organization thus becomes subordinated to the result of that organization's activity. It is easily conceivable that a corporation engaged in production of wares for market at a profit may have greater and more efficient facilities for scientific research and development than any nonprofit corporation. If such a profit making organization should create a department for scientific research exclusively, acquire property and make use of it for scientific purposes only, in my opinion

the property so set apart and utilized for scientific research, if held and so used by a domestic corporation, would very properly become a favorite of the law to the extent of being deemed entitled to exemption from taxation.

This exemption, however, should continue to be restricted to the property of domestic corporations, because they are constantly under the supervision of the corporation department with its access to all of their records.

The second reason why I favor the test mentioned, which is that of looking to the substance rather than the form, or to put it in another way, testing by actual performance rather than the prospective promise of nonprofit articles of incorporation, is that such a test implies that in order to merit exemption from taxation the benefits and advantages to the commonwealth from the use of the property must be real, actual and substantial, not merely theoretical, fanciful or imaginary.

I know of no magical attribute of nonprofit articles of incorporation rising to the importance of a fetish and giving them superior rank over other articles of incorporation.

Certainly, in actual practice, salaries of nonprofit incorporators may be substituted readily for dividends of profit sharing corporations. More than that in many, if not most, cases, the benefits to the commonwealth of scientific and literary effort cannot be appraised in terms of dollars and cents.

I am not unaware that the authorities are inharmonious upon the construction of similar exemption statutes; but in my view the weight of authority as well as the better reasoning accords with the views here expressed.

The stipulated facts herein are as follows:

## "I

"That on the first day of March in each of the years 1938, 1939 and 1940, the plaintiff corporation operated in the building on the real property described in the complaint, a school of the type commonly called a business college, in which were taught the usual subjects taught in such business colleges; that is to say, bookkeeping, shorthand, English, arithmetic, business administration and kindred subjects; that a tuition fee was charged to students attending such institution, varying in amount in accordance with the courses or number of courses or subjects taken by such students.

## II

That a portion of the ground floor of said building, approximately 12 x 20 feet, is rented to a tenant, and that the income received from such rental is paid in as a general receipt of the plaintiff corporation, and that on Sundays and Wednesdays a religious group or sect is permitted to hold religious services in the auditorium located in said building.

## III

That the said building is equipped with the usual furniture and equipment for teaching the usual business subjects taught in the institution, including books of reference, and that said books, furniture and equipment constitute the personal property on which taxes were assessed during said years 1938, 1939 and 1940.

## IV

That the defendants will, unless restrained by the court, proceed to collect the taxes assessed upon the real and personal property described in the complaint at the time fixed for such collection, and in the manner prescribed by law."

The corporate capacity of the plaintiff, the fact that defendant Multnomah County is a body corporate and a political subdivision of the State of Oregon, the official status of defendant Tom C. Watson, as assessor of Multnomah County, that of defendant, Martin T. Pratt, as sheriff and tax collector of said county, and of defendants O. V. Badley, Frank Shull and T. J. Kreuder, as county commissioners of said county, are admitted in defendants' answer.

It is also admitted in said answer that plaintiff is the owner of lots 7 and 8 in block 248, city of Portland, Multnomah County, Oregon; and that—

> "plaintiff is incorporated for the purpose of conducting and operating a college for liberal education and scientific purposes, among which it has the right and is engaged in the conduct and operation of a nonsectarian school for liberal education and scientific purposes in its various branches of a thorough and liberal education, including the training of students in business sciences and education."

It is also admitted in defendants' answer that the real property hereinbefore described is occupied by a three-story brick and concrete building approximately 100 x 100 feet in size.

It is likewise admitted that said real property was not assessed for taxation prior to the year 1938, and that in the year 1938, the assessor of Multnomah County placed said property upon the assessment roll and tax roll of said county and that the property has been assessed for taxation in the year 1939, 1940 and 1941.

Plaintiff claims exemption from taxation by reason of the statutory provision exempting

"The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated." Subdiv. 3, sec. 110-201, Vol. 7, O. C. L. A. p. 1086.

Plaintiff calls attention to the fact that the character of plaintiff's college is alleged in paragraph VII of the complaint and that this paragraph is admitted in the answer. The implication, therefore, of this phase of plaintiff's argument is that the property in suit is being used in the operation of a college for liberal education and scientific purposes.

I am unable to agree with this argument. The paragraph just mentioned does not allege that the college, referred to, is being conducted or operated upon the premises in suit.

Paragraphs VIII, IX and X of plaintiff's complaint contain allegations to that effect; but the part of said paragraph VIII, alleging that such a college is being conducted and operated in the building upon the real property in suit, is denied in the answer, and paragraphs IX and X of the complaint are also denied. Moreover, in the stipulation of facts, upon which this case was tried, as above stated, it is stipulated and agreed that the facts stated in said stipulation "may be taken as admitted and true on the trial of the above entitled case, in lieu of the introduction of any testimony thereon."

The question, therefore, is whether a school of the type commonly called a business college in which are taught the usual subjects taught in such business

colleges, that is to say, bookkeeping, shorthand, English, arithmetic, business administration and kindred subjects, is a literary or scientific institution within the meaning of the statutory provision exempting literary and scientific institutions from taxation. Subdivision 3, section 110-201, Vol. 7, O. C. L. A.

Plaintiff contends that it is such an institution and in support of its contention cites: *Willamette University v. Knight*, 35 Or. 33, 56 P. 124; *Detroit Home and Day School v. City of Detroit*, 76 Mich. 521, 6 L. R. A. 97, 43 N. W. 593; *Wilson's Modern Business College v. King County*, 4 Wash. (2d) 636, 104 P. (2d) 580; *Tulsa County v. Tulsa Business College*, 150 Okla. 197 1 P. (2d) 351; *Lawrence Business College v. Bussing*, 117 Kan. 436, 231 P. 1039; *Rohrbough v. Douglas County*, 76 Neb. 679, 107 N. W. 1000; *Montclair Military Academy v. Bowden*, 64 N. J. L. 214, 47 A. 490; *German Gymnastic Association v. Louisville*, 117 Ky. 958, 80 S. W. 201 65 L. R. A. 120, 111 Am. St. Rep. 287; *Webster City v. Wright County*, 144 Iowa 502, 123 N. W. 193 24 L. R. A. (N. S.) 1205; *People ex rel Walcott v. Parker*, 146 N. Y. S. 753, 84 Misc. Rep. 534; *Ward Seminary for Young Ladies v. Mayor and City Council of Nashville*, 129 Tenn. 412, 167 S. W. 113; *Denver Turnverein v. McGlone*, 91 Colo. 473, 15 P. (2d) 709; *Lummus v. Florida Adirondack School*, 123 Fla. 810, 168 So. 232; *In re Mountain State College, Inc., Assessment*, 117 West Va. 819, 188 S. E. 480; *State v. Northwest College of Speech Arts*, 193 Minn. 123, 258 N. W. 1; *Yale University v. Town of New Haven*, 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490; *State v. Fisk University*, 87 Tenn. 233, 10 S. W. 284; *State v. Carlton College*, 154 Minn. 280, 191 N. W. 400; *St. Johns Military Academy v. Edwards*, 143 Wis. 551, 128 N. W. 113, 139 Am. St. Rep. 1123.

The point decided in the case of *Willamette University v. Knight,* supra, is that premises leased for the purpose of conducting a nursery business thereon are not exempt from taxation. The difference between Willamette University and a business college is such that we are unwilling to apply the inference to this case which is reflected in that decision to the effect that property used by Willamette University for its educational purposes would be exempt.

The case of *Detroit Home and Day School v. City of Detroit,* supra, deals with a seminary. Webster's New International Dictionary defines a seminary as "A place of education, as a school of a high grade, an academy, college, or university." I think the distinction between a seminary and a business college renders the opinion in this case inapplicable to the case at bar.

The statutory provision invoked by plaintiff in the case of *Wilson's Modern Business College v. King County,* supra, differs from the statute invoked in the instant case. The Washington statute provided that all property, real and personal, owned by or used for any school or college in that state supported in whole or in part by gifts, endowment or charity, etc., shall be exempt from taxation. Rem. Rev. St., Section 11111.

At one point, the court say:

"If our legislature had intended to narrow interpretation of the words 'school or college' for which appellants contend, we doubt not that a proviso would have been written to bar private schools."

Again:

"The plain import of the exemption statute is that the terms 'school or college' are not limited to a paid class and should be given their ordinary meaning."

Neither the term school nor college is employed in the Oregon statute.

*Tulsa County v. Tulsa Business College,* supra, reflects the same statutory provisions as the Washington case last above discussed. Section 6, article 10 of the Oklahoma Constitution and section 9575 C. O. S. 1921, exempts all property used exclusively for schools, colleges and educational institutions from taxation. The court held that, under these provisions of the constitution and statute, private schools or educational institutions operated for a profit were exempt from taxation. The terms, ''literary and scientific'', were not discussed or defined.

While the terms ''education and educational'' were discussed in *Lawrence Business College v. Bussing,* supra, the terms ''scientific and literary'' were not. It was there held that a business college conducted for profit was not exempt from taxation.

The provision of the constitution of Kansas upon which was based defendants' claim of exemption from taxation reads:

''All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes * * * shall be exempted from taxation.''

In the opinion, the following quotation is made from Ruling Case Law:

''An exemption from taxation of the property of educational institutions is provided by the constitution or laws of most of the states. While the exact phraseology of the exemption differs in the different states it is generally considered that the exemption of such institutions is intended to be confined to those of the same general character as

the benevolent and charitable institutions with which they are associated in the statute and that it does not extend to schools which were not established primarily for the purpose of education but for the pecuniary advantage of individuals.'' 26 R. C. L. 320.

The most I find in the Kansas case under discussion in favor of plaintiff's contention herein is that the shortness of their course, the narrow field of their instruction and the utilitarian character of their aims do not prevent schools of the type usually described as business colleges from being regarded as ''educational institutions'' within the meaning of the constitutional provision exempting from taxation property used exclusively for educational purposes. Nothing appears in the opinion of the Kansas court holding that the terms ''literary and scientific'' are synonymous with the term ''education''.

*Rohrbough v. Douglas County,* supra, holds that a commercial college is a school within the meaning of section 13, article 1, chap. 77, Comp. St., Nebraska, 1903 (Cobbey's Ann. St. 1903, § 10,412). No reference is made to the terms '' scientific and literary institutions.''

*Montclair Military Academy v. Bowden,* supra, is based upon a statute exempting from taxation ''all colleges, academies or seminaries

of learning, public libraries, school-houses, buildings erected and used for religious worship, buildings used as asylums or schools for the care, cure, nurture, maintenance and education of feebleminded or idiotic persons or children, * * * and the land whereon the same are situate''

shall be exempt from taxation. The terms ''scientific and literary institutions'' were not used in the statute or discussed in the opinion.

*German Gymnastic Association v. Louisville,* supra, holds that a gymnastic association, where regular gymnastic exercises are taught and a teacher in physical culture is constantly employed, is an institution of education within section 170, constitution of Kentucky, exempting such institutions from taxation. The terms "literary and scientific institutions" were not considered.

*Webster City v. Wright Co.,* supra, holds that a public library is an educational institution and is exempt from taxation as such. It does not deal with commercial or business colleges.

*People ex rel. Wolcott v. Parker,* supra, sustains the claim of exemption from taxation of the property of an association organized to give thorough education, free of cost, to young men of promise, capable of self support as shown by actual experience, each being carefully selected by examination and vote after his application had been on file and he had been under observation for at least one year while pursuing a course of study. When he thus became a member, all his ordinary expenses in getting an education, including board, lodging, tuition, etc., were defrayed by the association; but as soon as his education was completed, he ceased automatically to be a member. The referee announced his conclusion to be that the association was organized exclusively and that Telluride House, taxation of which gave rise to the issues involved in the case, was used exclusively for charitable and educational purposes. The Supreme Court of New York approved the referee's report. It will be noted that nothing is said to the effect that the Telluride Association was a scientific or a literary institution. The statute of New York then provided that—

"the real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for * * * charitable, benevolent, * * * educational, scientific, literary, library, etc. purposes * * * or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation shall be exempt from taxation."

The two purposes only which were ascribed to the association were charitable and educational purposes. The question whether a commercial or business college should be deemed to be a literary or scientific institution was not considered.

*Ward Seminary for Young Ladies v. Mayor and City Council of Nashville, et al,* supra, holds that the property of the seminary used exclusively for educational purposes was exempt from taxation. Article 2, section 28 of the Constitution of Tennessee provided:

"All property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the state, by counties, cities or towns, and used exclusively for public or corporation purposes, and such may be held and used for purposes purely religious, charitable, scientific, literary or educational, * * * ."

The act of 1907, ch. 602, sec. 2, subsec. 2, Laws of Tennessee, contains the following exemption from taxation:

"All property belonging to any religious, charitable, scientific, or educational institutions, when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income. All property belonging to such institution used in secular business and competing with

a like business that pays taxes to the state shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business.''

We quote from the opinion:

''The result of the whole case is that we hold the property of the complainant which is in reality used in educational work, * * * to be exempt from taxation.''

It will be noted that complainant was conducting a seminary not a business college, and nothing is said in the opinion to the effect that it was conducting a literary or scientific institution.

*Denver Turnverein v. McClone,* supra, holds that property of a nonprofit corporation emphasizing teaching of physical culture is exempt from taxation as property used in the conduct of an educational institution. No reference is made to a literary or scientific institution, nor is it suggested that plaintiff's institution comes within such category.

In *Lummus v. Florida Adirondack School,* supra, the question presented was whether the real and personal property of a preparatory school or academy operated for gain and for profit by the complainant was exempt from taxation. The original opinion held that the property in suit of complainant was used for an educational purpose. Nothing is said about it being a scientific or literary institution, and obviously, it was not a business or commercial college.

Besides, on rehearing of a companion case under the same state of facts, the court was evenly divided upon the question whether the judgment of the trial court should be affirmed or reversed. *Lummus, et al v. Ransom,* 123 Fla. 830, 168 So. 241. For these reasons, we think the case is not controlling here.

In *In re Mountain State College, Inc., Assessment,* supra, the questions for determination were, (1) whether a commercial school is within the definition of college, seminary or academy; and (2) whether the privilege of exemption is affected by the profit motive feature of the school. In the opinion, it is stated that it is tacitly conceded by the state that the term, colleges, seminaries and academies include commercial schools. Nothing is said to the effect that commercial schools are either literary or scientific institutions.

*State v. Northwest College of Speech Arts,* supra, discloses that defendant, a domestic corporation, was conducting and operating a school offering instruction in all phases of speech and music, with a two-year course at the completion of which a diploma is given and a four-year course culminating in the degree of bachelor of arts, which institution requires a high school graduation on the part of entrants thereto. At the time of the trial, there were 225 students and ten or twelve teachers. The court held this school to be a seminary of learning. Nothing is said about it being either a scientific or a literary institution. Manifestly, it was not a business or commercial college.

*Yale University v. New Haven,* supra, holds, under the provision of the statute, that "buildings or portions of buildings exclusively occupied as colleges, academies, churches or public school-houses or infirmaries" shall be exempt from taxation. The buildings of Yale University, which were occupied exclusively as dormitories and dining halls by its students, were nontaxable. The court held that the word "college", used to denote a constituent of or the equivalent of "university", has acquired a definite meaning. It is there held that the term "college" means a building

or group of buildings in which scholars are housed, fed, instructed and governed under college discipline, while qualifying for their university degree, whether the university includes a number of colleges or a single college.

It is needless to add that Yale University is not and never was merely a business or commercial college. Moreover, in the opinion under discussion at this point nothing is said defining or construing the terms, "scientific or literary institutions".

*State v. Fisk University,* supra, construed the constitution and statutes of Tennessee exempting from taxation all property belonging to educational institutions and actually used for educational purposes. Nothing is said therein about the status of a business or commercial college, or as to the meaning of the terms scientific or literary institution.

*State v. Carleton College,* supra, deals with the provision of the constitution of Minnesota expressed thus:

> "Academies, colleges, universities and all seminaries of learning * * * shall be exempt from taxation."

Nothing is said therein upon the question involved in the instant case, namely, whether a business or commercial college is a literary or scientific institution.

*St. Johns Military Academy v. Edwards,* supra, was decided upon a general demurrer to plaintiff's complaint. The trial court overruled the demurrer and defendant appealed. It is alleged in plaintiff's complaint that, since its incorporation, plaintiff has been engaged solely in the business of conducting a school or academy for boys wherein instruction is given in literary and scientific studies in a general way equiv-

alent to the courses in the public high schools of Wisconsin; that it has during the past five years averaged more than 150 pupils in each year, with ten instructors.

By the statute, upon which exemption from taxation was claimed,

> "personal property owned by any religious, scientific, literary or benevolent association, used exclusively for the purposes of such association, and the real property, if not leased or not otherwise used for pecuniary profit, necessary for the location and convenience of the buildings of such association * * * ."

is designated as exempt from taxation. Section 1038, Wisconsin Statute, 1898, subdivision 3.

One contention of defendant was that plaintiff, being a corporation, was not an association. The court held that plaintiff was within the statute notwithstanding that it was an incorporated association.

Another contention of defendant was that the exemption applied only to property owned by religious, scientific, literary or benevolent associations, and that the plaintiff was neither. In the opinion, it is said that this presents the question whether a school is a scientific or literary association. The court held that the personal property of plaintiff was used exclusively for scientific and literary purposes. It must be borne in mind that the case under discussion at this point was that of a school of the standing of high schools of the state; and that it is not a case wherein the right of exemption from taxation was accorded to a commercial or business college on the ground that such institution is a scientific or literary institution.

In point of fact, plaintiff has not cited a case wherein a business or commercial school has been held to be a scientific or literary institution.

The burden is upon the plaintiff to show affirmatively that it is entitled to the exemption claimed.

Defendant cites *Parsons Business College v. City of Kalamazoo,* 166 Mich. 305, 131 N. W. 553, 33 L. R. A. (N. S.) 921. Under the applicable statute, the following property was exempted from taxation:

"Such real estate as shall be owned by library, benevolent, charitable, educational and scientific institutions incorporated under the laws of this state with the buildings and other property thereon, while occupied by them solely for the purposes for which they were incorporated."

In *Parsons Business College v. City of Kalamazoo,* supra, attention is directed to the fact that the words "educational" and "solely" have been added to the statute since the decision was rendered in the case of *Detroit Home and Day School v. Detroit,* supra, wherein it was said:

"Unless the term 'scientific institutions' includes educational corporations, there is no statute exempting from taxation any schools, unless those in the hands of public authorities, and those are only exempt by implication. And if it does not include the seminaries of learning, there is practically nothing exempted, for there are no other scientific institutions, properly so called. But it is a matter of common knowledge that all general educational establishments have universally been known as 'scientific institutions', and fall naturally and directly within it."

The opinion in *Parsons Business College v. Kalamazoo,* supra, continues by saying:

"Such construction brought within the terms of the exempting act educational corporations. The legislature later amended the law to include by

express terms 'educational' corporations. If this word had been included in the earlier law, the only question for the court in that case to determine would have been whether the institution claiming the exemption was within the class exempted. The majority opinion of the court in the case relied on by complainant (Home and Day School v. Detroit, supra) was considering and passing upon 'general educational establishments' in express terms, holding that it was a matter of common knowledge that such institutions have universally been known as 'scientific institutions'.''

''The minority opinion shows that this was a school with kindergarten, primary, preparatory, and collegiate departments, with courses of instruction in all the elementary and advanced sciences, and ancient and modern languages. In the advanced departments there were the courses of instruction usual in the colleges of this state. The court determined that it was a general educational establishment. * * * The court without doubt was correct in classifying that school as a general educational institution. This is the 'educational institution' intended by the legislature in the statute under consideration in the instant case. We have then this standard, as interpreted by the court by which to measure the institution of complainant which seeks the protection of exemption from taxes accorded to general educational institutions.''

''In our opinion it does not in any way measure up to the standard it has set up and claims for itself. It cannot be called a general educational institution. It is organized and conducted for special purposes only.''

From the foregoing quotations from the two Michigan cases, it will be seen that the supreme court of the state of Michigan limits the scope and meaning of the terms 'educational and scientific institutions'

to general educational institutions which do not include commercial or business colleges.

*Lichentag v. Tax Collector,* 46 La. Ann. 572, 15 S. 176, cited by defendants, treats of the term "schools" as used in the statute exempting property used exclusively for college or other school purposes. The language of the opinion is as follows:

"The word 'school' as employed in the above article, is used in the ordinary meaning of the word, and must, therefore, be applied to the class of institutions which are embraced within that meaning. In its most extensive signification it embraces places where learned men meet for instruction and intercourse, where they may discuss and promulgate ideas of a particular and individual character, and promote the dissemination of a particular theory. It embraces the learned of a particular profession, when associated for special purposes, such as the college of surgeons, and it is applied to describe an assemblage of a particular kind, or the followers of a particular teacher in theology, science, philosophy, or medicine. It certainly, in the constitution, applies to none of these, but is used for the purpose of describing ordinary schools, such as we know in common speech,—educational establishments below the grade of college, in which elementary knowledge is imparted. Such institutions are for the purpose of instructing young children, and are known as primary or common schools or academies. Such institutions are for acquiring knowledge and mental training. Plaintiff's evidence shows that the teaching of typewriting and stenography is made part of the instruction of schools and colleges, and is a means of mental training. But this fact would not constitute these mechanical arts as the means of acquiring general knowledge and mental training. Boxing, fencing, dancing, in fact, all gymnastic exercises, instruction in which forms a part of the

course in every institution of a high grade, in some degree train the mental as well as physical conditions, but they are not for this reason the necessary accompaniments of education. Painting is one of the most instructive of the arts, yet no one will contend that a building in which painting is exclusively taught is exempt from taxation. Music, also, is instructive, and develops to a high degree certain of the mental faculties, and, like painting promotes the vigor of the imagination and strengthens the reasoning faculty. They are both taught in all well-established schools and colleges, yet no building devoted exclusively to the teaching of these arts would be exempt from taxation for the reason that they do not necessarily enter into any scheme of general knowledge, and are not essential to the training of the mental faculties. Stenography is an art; shorthand writing, the use of abbreviations or characters for whole words. Typewriting can scarcely rank as an art, and may be classed as mechanical occupation, like the setting of type. Neither one of these occupations enter into a scheme of education for the acquisition of knowledge or the training of the mental faculties. That they incidentally improve some faculty cannot be disputed; that they may have a healthy influence on all the faculties may be admitted; but many mechanical occupations do the same thing. It is difficult to conceive of any exercise of the physical powers without in some degree exercising a wholesome influence on the mental faculties. The occupation of the plaintiff, which he is teaching to his pupils, presupposes an acquisition of knowledge and a mental training, and the object of the school is not for the purpose intended by the primary or common school or academy. It is the teaching of a trade which the pupils expect to follow for a livelihood. Schools for lawyers and doctors, exclusively devoted to the preparing of them for their professions, presuppose a previously acquired fitness, and they enter into no general plan of common educa-

tion. The school buildings for these purposes are not exempt, as they are intended for a special class for special purposes of professional calling. And so it is with plaintiff's school. It is intended to educate a particular class for a special object and for a specific calling, in an occupation by which to make their way in life. The institution presupposes all that is required for such a calling has been obtained in some school or college devoted to the purpose of imparting knowledge and mental training.''

In an early case before the supreme court of Indiana, the term ''literary institution'' was considered. It was a case wherein the plaintiff conducted a boarding day school. Under the Indiana statute, then in force, every school-house was exempt from taxation and the term ''school-house'' was held to apply only to public property.

Subdivision 5 of section 6 of the act providing for the assessment and collection of taxes (R. S. p. 106) was treated as follows:

''The fifth subdivision exempts every building erected for the use of any literary, benevolent, charitable, or scientific institution. That all these qualities belong, in some degree, to every school where good morals, and instruction of any grade are inculcated, we do not doubt. They belong also to every well regulated family. But we think the exemptions here intended apply to distinct and well known classes. If the property in question belongs to either class, it is the literary. Is the school in question a literary institution? The word literary having no fixed legal significance, is to be taken in its ordinary and usual meaning. We speak of literary persons as learned, erudite; of literary property, as the productions of ripe scholars, or, at least, of professional writers; of literary institu-

tions, as those where the positive sciences are taught, or persons eminent for learning associate, for purposes connected with their professions. This we think the popular meaning of the word; and that it would not be properly used as descriptive of a school for the instruction of youth." *The Common Council of Indianapolis v. McLean,* 8 Ind. 328, 332.

There is nothing in the stipulation of facts in the case at bar indicating that prior to the first day of March, 1938, plaintiff operated or conducted its school upon the premises in suit. For this reason, the question of practical construction of the statute in question by the tax authorities manifested by their alleged failure to assess said premises prior to 1938, is not before us.

"Property of charitable, educational and benevolent societies is exempt from taxation if the local statute so authorizes. The exemption of such institutions is purely statutory and, hence, the provisions of the statute govern the nature and extent of the exemption." *Security Savings & Trust Co. v. Lane County,* 152 Or. 108, 141, 53 P. 2d 33.

As stated, I think that plaintiff's business college is neither a scientific nor a literary institution within the meaning of the statute exempting such institutions from taxation, and, hence, the property in suit is not exempt from taxation.

For these reasons, I concur in the resulting reversal of the decree of the circuit court and a dismissal of this suit.