PUERTO RICO HIGH SCHOOL OF COMMERCE, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

Nos. 253–254. Argued April 1, 1951.—Decided January 27, 1955.

*Rafael Soltero Peralta* for petitioner. *José Trías Monge, At-torney General (Vicente Géigel Polanco, Former Attorney General,* in the brief), and *Cándido Ceballos, Assistant At-torney General,* for intervener, defendant in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The petitioner, Puerto Rico High School of Commerce, Inc., was organized under that name as a local corporation under the Law of Private Corporations of Puerto Rico of March 9, 1911, as amended. It received from the Secretary of Puerto Rico the corresponding certificate of its corporate existence on May 19, 1941. According to the fourth clause of its articles of incorporation [1] the petitioner was established

---

[1] Among the powers assigned in the articles of incorporation to ef-fectuate the charter's ends and purposes, is clause 6 which provides:

"To carry out everything which may be necessary and proper for the adequate realization of the objective planned for the corporation in this document and which may be necessary and incidental to the growth or benefit of the corporation in the ordinary course of its business, and in general to carry out any transaction or legal business which may be necessary or incidental to the effectuation of the objectives and purposes

"for the fundamental purpose of re-establishing and maintaining an institute or private secondary school for instruction in commercial subjects, a secretarial course, a course of general studies, languages and other subjects appropriate in a school of secondary instruction and in a high school." According to the articles of incorporation the institute or school was to be known only as the *Puerto Rico High School of Commerce*.

The authorized capital of the corporation was $100,000, divided into 1,000 shares each with a par value of $100. The corporation commenced business with a paid-in capital of $3,000, each of the three incorporators taking 10 shares.

In accordance with the purpose of its creation and as a lucrative business, the corporation established a school of commerce,[2] collecting matriculation fees from the students.[3] One of the three incorporators was the principal director, another the academic director and teacher, and the third was the general administrator and assistant director.[4] The prop-

---

of the corporation, or which conveniently might be carried out in connection with any of the business of the corporation."

[2] The lucrative nature of the enterprise has been admitted by the petitioner as evidenced by the statement in its petition: "The corporation admitted at the trial that it was not a charitable institution nor did it offer instruction gratis.

"The corporation is dedicated to instruction, but it charges for the service rendered to students, and hence has the nature of a lucrative enterprise."

[3] This school is accredited by the Department of Education of Puerto Rico.

[4] During the years 1941 to 1949 inclusive, the salaries paid them were as follows:

| Year | Principal Director | Academic Director and Teacher | General Administrator and Assistant Director |
|------|-----|-----|-----|
| 1941 | $2,250 | $1,500 | $1,500 |
| 1942 | 2,600 | 1,700 | 800 |
| 1943 | 3,600 | 2,400 | 1,600 |
| 1944 | 4,600 | 2,800 | 2,000 |
| 1945 | 5,600 | 3,200 | 1,800 |
| 1946 | 7,450 | 3,700 | 2,700 |
| 1947 | 8,250 | 5,250 | 3,550 |
| 1948 | 8,250 | 5,250 | 3,750 |
| 1949 | 8,250 | 5,250 | 3,750 |

erty which the corporation acquired in the course of its business consisted in 1949 of a little more than a cuerda of land containing two buildings already constructed and a third in the process of construction in which the school was installed: classrooms, libraries, school equipment, offices and other facilities appropriate in an educational institution.

The corporate profits earned were allowed to accumulate until March 12, 1948,[5] when the Board of Directors declared a dividend at the rate of one hundred dollars per share, a total of $18,000, and a stock dividend at the rate of $19,000 to each stockholder, a total of $57,000.

Claiming to be exempt from payment of the property tax by reason of the provisions of Article 291 (e) of the Political Code,[6] the Puerto Rico High School of Commerce, Inc.—having complied with the prerequisite legal procedure—peti-

---

[5] As appears from Exhibit II of the defendant.

[6] The pertinent part of the Article cited, as amended by Act No. 12, of August 23, 1933—and prior to amendment by Act No. 266, of May 10, 1950—follows:

"The following properties shall be exempted from taxation:

(a) . . . . . . . .
(b) . . . . . . . .
(c) . . . . . . . .
(d) . . . . . . . .

(e) Every building used and set apart exclusively for religious worship, as well as parish houses used exclusively as dwellings of priests, ministers, or clergymen in general who officiate in the corresponding parishes and churches, and where they constantly live, provided said parish houses belong to the respective order or institution and are situated in the same municipality to which the church belongs, including the pews, seats, and furniture within the same; every building set apart for a Masonic or Odd-Fellows' lodge, or for a center for theosophical or psychological studies; or used for educational, literary, scientific or charitable purposes, together with the furniture, appliances and apparatus appurtenant thereto; every building, including the equipment and furniture therein, which is the absolute property of a non-pecuniary association and which is used or destined exclusively and wholly for labor organizations or as a place for recreation, culture, and social intercourse, and which permanently maintains a reading room where periodicals, magazines, pamphlets and illustrated papers in general, national as well as foreign, are provided; and every tract of land, not exceeding five cuerdas in extent, upon which such building or buildings is or are situated; Provided, That such grounds and buildings are not leased or otherwise used with a view to the pecuniary profit of either the lessor or lessee."

tioned the former Tax Court for a refund of the tax already paid for the years 1942–43 to 1948–49, and in a separate petition the imposition of a tax for the year 1949–50 was challenged. That Court denied both the petition for refund as well as the challenge referred to, holding that the exemption provided by the cited article of the Political Code does not encompass the petitioner's property, since the latter is devoted to educational activity carried on as a lucrative business.

The petitioner then appealed to this Court in separate petitions for certiorari with the same claim made in the court below for tax exemption under the provisions of the law previously cited. Since the basis of both appeals is identical, we shall treat them as one case.

■■ The petitioner claims that property on which it has developed its corporate business is exempt from the property tax, since its property is used for educational purposes. It therefore falls within the following grouping exempt by law: "every building set apart for a Masonic or Odd-Fellows' lodge, or for a center for theosophical or psychological studies, or *used for educational*, literary, scientific or charitable *purposes*, together with the furniture, appliances and apparatus appurtenant thereto." Contrary to the position of the intervener, the petitioner's criterion includes as exempt the property of educational institutions carried on for lucrative ends or for the profit of their owners, as well as institutions not having such ends, since the statute does not expressly limit the exemption to the latter type of institution. Let us see.

Since the issue is the scope of the exemption provided by the Legislature in § 291(e) of the Political Code, the problem is one of statutory interpretation. The exemption claimed must be denied if the statute contains neither by express statement nor by necessary implication the legislative intent that the exemption shall include buildings used

for educational purposes when operated as a lucrative business—whose primary end is the earning of pecuniary profits utilizing an educational institution as a means—since tax exemptions must be interpreted restrictively against the taxpayer. *Teacher's Association* v. *Treasurer*, 54 P.R.R. 511, 514; *Monllor & Boscio, Sucrs.* v. *Sancho, Treasurer*, 61 P.R.R. 63, 69; *Puerto Rico Ilustrado* v. *Buscaglia, Treasurer*, 64 P.R.R. 870, 874; *National Hats Co.* v. *Sancho, Treasurer*, 65 P.R.R. 226, 229; *Buscaglia, Treasurer* v. *Tax Court and Receivership Rubert Hermanos*, 68 P.R.R. 34, 36; *Wood* v. *Tax Court*, 71 P.R.R. 216, 218; *Descartes, Treasurer* v. *Tax Court and Cervecería India*, 71 P.R.R. 479, 483; *Sucn. Serrallés* v. *Tax Court*, 73 P.R.R. 33, 36; *Descartes, Treasurer* v. *Tax Court and Ortiz*, 73 P.R.R. 450, 456.

From an examination of the statute we conclude that although the Legislature in classifying exempt property into three groups did not expressly require that the activities in which property for *educational* purposes—included in the second of these groups—is used be operated without lucrative ends or pecuniary profit when it is owned by the party making use of it, such an express requirement is not essential. This should be understood as part of the legislative purpose, taking into account the nature, not intrinsically lucrative, of the other activities included in this group, determining the exemption, which activities in general do not offer profits of this kind, being intended solely for the welfare of the community through services which are culturally, intellectually, morally and spiritually beneficial. Applying the rule of statutory construction *noscitur a sociis*, we conclude that since educational activity is included together with other activities of a non-lucrative character, the concession of the exemption is conditioned by the non-pecuniary nature of the latter activities. *Behnke-Walker Business College* v. *Multnomah County*, 146 P. 2d 614, 616; *Lawrence Business College* v. *Bussing*, 231 Pac. 1039. *Contra: Pitcher* v. *Wolcott School Association*, 165 Pac. 608.

The Legislature has ample power to grant tax exemptions, but the exercise of that power presupposes the achievement of some objective of public interest which justifies the State in agreeing to the concession. Generally, such exemptions as those provided by §291 (e) of the Political Code are granted in consideration for services or activities essentially public in nature, which are not motivated by profit, and which are beneficial to the community in general. See *Dwight School v. State Board of Tax Appeals*, 177 Atl. 875, 878; *Treasurer v. Tax Court and Auxilio Mutuo*, 66 P.R.R. 623. The reason for this is that the concession of a tax exemption relieves a taxpayer from responsibility for the tax burden which he otherwise would have to bear, and that responsibility is shifted to the remaining taxpayers. Hence, every tax exemption implies the factor of general benefit to the community as defined by the governmentally devised norms of public policy.[7]

The court below did not commit the error assigned by the petitioner. It concluded correctly that petitioner's property was not exempt from the property tax.

The judgments of the Tax Court are affirmed.

---

[7] Our Legislature, by special laws, has granted tax exemption to property of diverse educational institutions, which like that of the petitioner, operate for pecuniary ends. In so doing there had to be present, however, "the beneficial labor that is realized for the good of youth, offering education free to a large number of poor students." To this effect, see Acts No. 192, of May 13, 1938, p. 393, No. 109, of April 30, 1940, p. 677, and No. 350, of April 17, 1946, p. 945.