# STATE v. NORTHWESTERN COLLEGE OF SPEECH ARTS, INC.[1]

December 21, 1934.

No. 30,120.

*Chester W. Johnson,* for appellant.

*Ed J. Goff,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for the state.

HOLT, JUSTICE.

In proceedings to enforce the real estate tax for the year 1930, defendant answered as to two lots situate on the corner of Portland avenue and Twenty-sixth street in the city of Minneapolis, claiming that they were exempt from taxation. The property is the former home of the late Mr. Savage. It is a commodious three-story frame structure. The court found that the premises were not exempt. The assignments of error all go to the proposition that finding of fact IV, *viz.:* "That said property was not during the year 1930 owned and used as an academy, college, university or seminary of learning within the exemption provision of the constitution of the state of Minnesota," is not sustained by the evidence. The state made a *prima facie* case by the introduction in evidence of the list of taxes delinquent on the first Monday in Jan-

[1]Reported in 258 N. W. 1.

uary, 1932. The defendant, a domestic corporation, bought the property in the summer of 1928. The only testimony as to the purpose of the corporation and the use of the property since its purchase came from Mr. Lawrence M. Brings, the president of defendant and one of its three stockholders, the majority of the stock being held by his wife. His testimony was that defendant was organized primarily to offer instruction in all phases of speech and music: "The backbone of the institution is a college course in speech that we offer; that is conducted on a regular college basis. There are 15 to 18 hours' class work offered during the day. There is a two-year course. We require a high school graduation for entrance to it." A diploma is given at the end of two years. And on completion of a four-year course a degree of Bachelor of Arts in speech education is awarded. Private lessons in all phases of speech and certain branches of music are given. A four-year course would include from 40 to 50 courses. Before the depression the attendance had been as high as 475 students. At the time of the trial there were 225 students and 10 or 12 teachers. Mr. Brings had been a teacher at the University of Minnesota. The institution has in the department of English regular college subjects, a department of education with subjects for those preparing to teach, a department of dramatic art with special instruction in play production, and kindred subjects. The number of students taking the regular two-and four-year courses has decreased from 50 to about 30 now. Some of the teachers are not on a regular salary, but receive a percentage of the tuition paid by the students in the classes taught by such teachers. The state department of education issues a special provisional certificate to the four-year graduate of the institution upon petition of a superintendent of a school system in Minnesota who wishes to employ such graduate.

The state constitution, art. 9, § 1, as far as here pertinent provides:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, but public burying grounds, public school houses, public hospitals,

academies, colleges, universities, and all seminaries of learning * * * shall be exempt from taxation * * *."

1 Mason Minn. St. 1927, § 1975, enacted pursuant to this constitutional provision, reads:

"All property described in this section to the extent herein limited shall be exempt from taxation, to-wit: * * *

"(4) All academies, colleges, and universities, and all seminaries of learning. * * *"

That defendant carries the word "college" in its name does not make it a college. But we cannot escape from the conclusion that defendant owns and conducts a seminary of learning within the meaning of the constitutional and statutory provisions above quoted which exempts the real property involved from taxation. In County of Hennepin v. Grace, 27 Minn. 503, 8 N. W. 761, 762, a parochial schoolhouse and grounds were held exempt, the court being inclined to classify such property as used for public charity. But it was also said [27 Minn. 506]:

"It may well be questioned, however, whether, in specifically enunciating as the subject of exemption 'public school houses, academies, colleges, universities, and all seminaries of learning,' it was not intended to include in last named class all schools of an educational character not mentioned in the preceding part of the section. The word 'seminary' has no fixed legal meaning. Abbott's Law Dictionary, 'Seminary.' It is defined by Webster to be 'a place of training; institution of education; a school, academy, college or university, in which young persons are instructed in the several branches of learning which may qualify them for their future employments.' The origin of the word would seem to imply the place where the seeds of an education are sown and implanted. It is neither a strained nor unnatural construction to hold that it was used in the clause under consideration in its broadest sense, to denote any and every place of training or institution of learning not already specifically named."

So, though not within the designation of a public schoolhouse, the parochial schoolhouse and grounds were held exempt as a seminary

of learning. Chief Justice Gilfillan doubted that the parochial school came under the head of "public charities" under the exemption provision of the constitution and said [27 Minn. 507]:

"It is, within the meaning of that instrument, a 'seminary of learning,' and as such exempt from taxation."

In County of Ramsey v. Stryker, 52 Minn. 144, 53 N. W. 1133, 1134, the court held a girls' school, owned and conducted by a private individual, a seminary of learning and hence exempt from taxation. After referring to legislative history from territorial times, the court thus spoke respecting limiting words in the statute then- existing, with reference to the exemption of the property of educational institutions, that it was to include the grounds attached to such buildings, necessary for their proper occupancy, use, and enjoyment, and not leased or otherwise used with a view to profit [52 Minn. 146]:

"This statute, though not so carefully worded, must be construed in the light of the constitutional provision, and as intended to follow its directions. It includes 'all seminaries of learning' open for the instruction of the young and the dissemination of knowledge. It is not necessary, to entitle a school to such exemption, that it shall belong to or be a part of the general educational system provided by the state, any more than the colleges and academies within its bounds, founded and sustained by private patronage. The character, objects, and benefits of such an institution are public in their nature, and fall within the intent and purposes of the exemption contemplated by the constitution."

And it was held that the fact the tuition was charged and whether receipts therefrom might or might not exceed expenses was immaterial. With these two decisions in our reports, art. 9 of the constitution was amended in 1896 and 1906, rearranging and consolidating several sections in § 1, but no change whatever was made in the wording exempting educational institutions or schools from taxation. This would indicate acquiescence in the court's interpretation of the term "seminaries of learning" so as to include parochial schools and schools for girls owned and established by

an individual for profit.   We see no good reason for excluding defendant's institution from claiming exemption as a seminary of learning.   The fact that it specializes in a few branches of learning and offers fewer courses than other educational institutions cannot serve as a valid ground for subjecting its property, used exclusively in carrying on the school, to taxation.   Further reasons for a construction exempting an educational institution from taxation and adherence to the two decisions cited are found in State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; State v. Carleton College, 154 Minn. 280, 191 N. W. 400.   We hold that the evidence requires a finding that the property in question was exempt from taxation.   We have in mind the rule of construction of provisions of the constitution and statutes governing exemptions from taxation as declared in State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

It is hardly profitable to discuss decisions from other states cited by the parties herein, for the constitutions and statutes differ materially in the several states upon the subject here involved. Defendant relies on Pitcher v. Miss Wolcott School Assn. 63 Colo. 294, 165 P. 608, L. R. A. 1917E, 1095; Yale University v. Town of New Haven, 71 Conn. 316, 42 A. 87, 43 L. R. A. 490; State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S. W. 1083, 21 L.R.A.(N.S.) 171; City of Jackson v. Preston, 93 Miss. 366, 47 So. 547, 21 L.R.A.(N.S.) 164; Rohrbough v. County of Douglas, 76 Neb. 679, 107 N. W. 1000; Board of Commrs. v. Tulsa Business College, 150 Okl. 197, 1 P. (2d) 351; Ward Seminary v. City of Nashville, 129 Tenn. 412, 167 S. W. 113.   It may be rightly claimed that the constitutional provisions are somewhat broader in Colorado, Missouri, and Nebraska than those of our state in that "schools" are exempt and no other name for other educational institutions is used.   In Oklahoma the property of schools and colleges is designated as free from taxation.

Plaintiff relies on Pomfret School v. Town of Pomfret, 105 Conn. 456, 136 A. 88, 89; People ex rel. McCullough v. Deutsche Lutherische Gemeinde, 249 Ill. 132, 94 N. E. 162; Lichtentag v. Tax Collector, 46 La. Ann. 572, 15 So. 176; Selectmen of Clinton v. Wor-

cester Cons. St. Ry. 199 Mass. 279, 85 N. E. 507; Parsons Business College v. City of Kalamazoo, 166 Mich. 305, 131 N. W. 553, 554, 33 L.R.A.(N.S.) 921; State ex rel. Jones v. Erickson, 75 Mont. 429, 244 P. 287; Commonwealth v. Banks, 198 Pa. 397, 48 A. 277. The Connecticut statutes relating to exemption from taxation of schools, academies, and colleges have been construed to mean that in order to be entitled to such exemption the property of the institution must be [105 Conn. 459] "sequestered from private, and devoted to the public, use." This is not so in this state. See County of Ramsey v. Stryker, 52 Minn. 144, 53 N. W. 1133. In the Illinois case cited the decision turned on the lack of proof of the use of the property exclusively for school purposes. The Louisiana case held that property used for conducting a school of stenography and typewriting was not exempt from taxation since such a school was not within the meaning of the constitution which exempts property used exclusively for colleges and other school purposes. The Massachusetts case did not relate to tax exemption. The constitution of Michigan is more restrictive than ours, but the case cited is of value as showing that a business college does not come within [166 Mich. 308] "educational and scientific institutions incorporated under the laws" of Michigan, as exempt from taxation. The case above cited from Montana and the one from Pennsylvania do not relate to exemptions from taxation.

There are institutions teaching various accomplishments and incorporating in the name such words as a college or academy, which are not to be classed with "seminaries of learning" or "colleges" or "academies" to which the constitution grants exemption from taxation. We have barber colleges, dancing academies, riding schools, and the like, which no one will claim to be exempt from taxation. In Lawrence Business College v. County of Douglas, 117 Kan. 436, 231 P. 1039, it was held that a business college came within the designation of an educational institution exempt by the Kansas constitution from taxation, but, as in some other states, the educational institution organized for pecuniary profit, or so that there is a possibility of a profit, are held not entitled to exemption from taxation. The case of County of Ramsey v. Stryker,

52 Minn. 144, 53 N. W. 1133, has settled the meaning of the exemption provision in our constitution to the contrary; and, we think, since the people amended the article relative to tax exemption after that decision without any attempt to change or disapprove of the interpretation placed by the court thereon, the court should not now reverse its former holding.

The order is reversed.