IN RE PETITION OF S. R. A., INC.
S. R. A., INC. v. STATE AND COUNTY OF RAMSEY.[1]

December 24, 1942.

No. 33,270.

[1]Reported in 7 N. W. (2d) 484.

488

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *Andrew R. Bratter* and *Edward E. Cleary,* Assistant County Attorneys, for appellants.

*Otis, Faricy & Burger,* for respondent.

JULIUS J. OLSON, JUSTICE.

These proceedings were brought by respondent pursuant to Minn. St. 1941, § 278.01 (Mason St. 1940 Supp. § 2126-1) to secure an order of the court "determining that the title" to certain real estate in St. Paul "is in the United States," and for that reason "exempt from taxation by the state"; also (we assume as an alternative) to reduce "the full and true value of said premises to the actual value thereof." (Hereafter we shall refer to respondent as S. R. A. and to appellant as the state.)

Counsel stipulated as to the facts. These were adopted by the court as its findings and an additional finding, No. 13, made by it, to which reference will be made later. A brief summary thereof will be sufficient for our purpose.

Title in fee to the premises involved was acquired by the United States in 1867, and since that time its record title has so remained. Over a period of many years the site was occupied by the United States as a post office and for other governmental purposes. But later, and "for some years prior to the 26th day of May, 1939," the premises were not in use by anyone. On that date a contract for deed was entered into between S. R. A. and the United States. Under its terms, for a consideration of $121,101, to be paid, after the initial payment, at the rate of $9,500 during each of the next succeeding nine years, the United States agreed, if on May 26, 1949, the final due date, S. R. A. "has paid the total purchase price," with interest and otherwise complied with all the terms of the contract, to "execute and deliver to S. R. A. Incorporated a quit claim deed conveying to it or its nominee a marketable title to the premises, free and clear of all encumbrances, objections, or defects, *except such as may have accrued against the purchaser's interest in the property subsequent to May 26, 1939.*" (Italics supplied.) (The contract is silent on the subject of taxes, unless the italicized portion may point in that direction.)

Upon the execution of the contract, S. R. A. entered into full possession, razed the existing buildings, erected another, and made use of the remainder for an automobile parking lot, leasing the new building and parking lot for commercial purposes and for the rental income derived therefrom. No part thereof has since been devoted to any business or activity of the United States. S. R. A. has taken and retains all rents and income for its own account. On May 1, 1940 (the assessment date under our law), the assessor of Ramsey county assessed the property upon the same basis as other like property, listing it for taxation as being owned by "S. R. A. Incorporated 'subject to fee title remaining in the United

States of America.'" Instead of paying the taxes so levied, S. R. A. brought these proceedings.

Finding No. 13 reads: "That there is no authority, statutory or otherwise, which will permit the assessment of a tax against said premises subject to fee title remaining in the United States of America."

As conclusions of law the court held (1) that title to the premises was on May 1, 1940, in the United States "and that the same were exempt from taxation by the State of Minnesota or the County of Ramsey"; and (2) that "the tax assessed against the premises above described subject to fee title remaining in the United States of America for the year 1940 and the whole of said tax is illegal and void and of no force and effect."

"Only the question of immunity from taxation" was "submitted," all other questions being reserved "for determination at a later date in the event that the State prevails" upon that issue.

The state's blended motion for amended findings or new trial was denied, and it appeals. Under our practice, only that part of the order denying a new trial is here for review.

That S. R. A. is in complete possession, and is enjoying full use, of the property as a commercial enterprise in competition with other like real estate in St. Paul is not, nor can it be, denied. As to its value, counsel stipulated, and the court found, that "for the purposes of determining the issue here submitted * * * the property in question was assessed and taxed as all other real property * * * and upon the same rates as other like real property" in St. Paul, and that the assessor "determined" its "true and full value * * * as of May 1, 1940," to be $277,600. So, at the outset, it would seem to most people that this property and S. R. A.'s use and possession of it should bear its just proportion of the public tax burden.

As we pointed out in Reed v. Bjornson, 191 Minn. 254, 257, 258, 253 N. W. 102, 104, "the power of taxation is inherent in sovereignty." As such, "constitutional provisions are not a grant of, but a limitation upon, this power, and except in so far as thus

limited it is exhaustive and embraces every conceivable subject of taxation." As said by Mr. Justice Mitchell in County of Redwood v. Winona & St. P. Land Co. 40 Minn. 512, 517, 41 N. W. 465, 42 N. W. 473, 475:

"The taxing power, when acting within its legitimate sphere, is one which knows no stopping-place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by any obstacles, it may return again and again until, the way being clear, the tax is collected."

The same thought is expressed in Nicol v. Ames, 173 U. S. 509, 515, 19 S. Ct. 522, 525, 43 L. ed. 786, 791, in this fashion:

"The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive."

■ Taxes have been defined as "pecuniary charges imposed by the legislative power of the state upon property to raise money for public purposes." Davidson v. County of Ramsey, 18 Minn. 432, 434 (482); "a burden imposed for the very lifeblood of the state," London & N. W. Am. Mtge. Co. v. Gibson, 77 Minn. 394, 399, 80 N. W. 205, 207, 777. In some of our cases we have characterized a tax as a "contribution" by the citizen in return for the protection afforded him by the state. But this, obviously, is an erroneous theory, since the "power to tax is not a statutory right, but an incident of sovereignty." Webb v. Bidwell, 15 Minn. 394, 397 (479).

Mr. Justice Stone (now Chief Justice of the United States Supreme Court), in a dissenting opinion (G. N. Ry. Co. v. Weeks, 297 U. S. 135, 155, 56 S. Ct. 426, 436, 80 L. ed. 532, 544) said: "Taxation is but a method of 'raising revenue to defray the ex-

penses of government, and of distributing the burden among those who must bear it."

■ We think the state's power to tax S. R. A.'s interests and rights cannot be doubted. So the question is only whether the legislature has provided the necessary mechanics for reaching its interests. It is for the legislature to devise the mode, form, and extent of taxation to be imposed. Webb v. Bidwell, 15 Minn. 394 (479); 6 Dunnell, Dig. & Supp. § 9115, and cases under note 23.

■ Under our law, real estate taxes are assessed and enforced against the land itself. They are not charges against the person owning the property or his estate. Proceedings to enforce them are strictly *in rem.* In that respect they differ from personal property taxes, which are enforced *in personam,* although assessed and imposed because of property ownership. 6 *Id.* § 9281, and cases under notes.

■ Real estate for taxation purposes, by Minn. St. 1941, § 272.03, subd. 2 (Mason St. 1927, § 1977), includes "the land itself," all "structures and improvements" upon it as well as "all rights and privileges" belonging or appertaining to the land, "and all mines, minerals, quarries, fossils, and trees on or under the same." It will thus be seen that each parcel of real estate is a separate entity, a unitary item. In proceedings to enforce the tax it is the property itself that is charged. The obvious purpose of so levying and enforcing the tax is to reach all interests and equities in the property, so that in the tax proceedings, if otherwise regular and valid, the holder of the tax certificate ultimately becomes the owner of the fee. In the instant case, S. R. A. takes the view that, since the fee is still in the United States and cannot be reached, therefore its interest in the property may not be reached, and this upon the theory that there is no provision under our law by which a mere "equity" of the purchaser may be reached in the circumstances here appearing.

The state does not question tax immunity as to the United States and does not claim that as to it the fee title may be divested. Its position is that S. R. A., having purchased the property

in the usual course of a commercial transaction, stands in no other or better position than any other purchaser under a like contract with an individual or corporation. It points out that under our statutes and decision law the owner of the fee holds only the legal title as security for the payment of the purchase price; hence that the purchaser is charged with the entire burden of meeting all taxes that might lawfully be levied if it were dealing with anyone else. In other words, it takes the view that the tax burden is the same as if the United States had parted with its title and taken a mortgage back for the unpaid portion of the purchase price. Furthermore, it contends that S. R. A. is not in a position to use the federal government's tax immunity as a barrier to the enforcement of the tax as levied. And, since the United States is not a party to this proceeding, S. R. A. cannot be heard as the champion of the government's interests or right of tax immunity.

■ By L. 1907, c. 328, § 1, now Minn. St. 1941, §§ 287.01, 287.02, 287.03, 287.04 (Mason St. 1927, § 2322), it was provided:

"The words 'real property,' 'real estate' and 'land,' as used in this act, in addition to the definitions thereof contained in the Revised Laws 1905, shall include all property a conveyance whereof may be recorded or registered by a register of deeds under existing laws; and the word 'mortgage,' as so used, shall mean any instrument creating or evidencing a lien of any kind on such property, given or taken as security for a debt, notwithstanding such debt may also be secured in part by a lien upon personalty. *An executory contract for the sale of land, under which the vendee is entitled to or does take possession thereof, shall be deemed, for the purposes of this act, a mortgage of said land for the unpaid balance of the purchase price."* (Italics supplied.)

■ A mortgage upon real estate, as we have consistently held, while in form a conveyance of an estate or interest in land, in its purpose and effect is a mere lien or security—a chattel, or thing in action, which passes to the mortgagee's administrator or execu-

tor. 4 Dunnell, Dig. & Supp. § 6145, and cases cited under notes 1 to 4, inclusive.

■ This statute has been before this court in many cases and has withstood constitutional and other attacks. For our purpose, the summation of our prior cases made by this court in Summers v. Midland Co. 167 Minn. 453, 455, 209 N. W. 323, 46 A. L. R. 816, is worthy of quotation here:

"What is the status of the parties to such contract for deed? The vendor holds the legal title merely as security for the payment of the purchase price. He has a lien thereon for his claim. In legal form he has agreed to convey a good title at a future time. But we must look to the substance of the transaction more than to the form. The vendee is the equitable and substantial owner subject only to the payment of the balance of the purchase price. Possession is important. He cannot be ousted by the vendor in the absence of default. He pays the taxes. The relation is substantially that of mortgagor and mortgagee. * * * The only difference is a more efficient remedy in case of default. The vendor holds the title in trust for the vendee. * * * The vendee's interest in the land may be sold on execution. * * * It may become the subject of a trust or power in trust and it may be mortgaged. * * * It may be a homestead. * * * The vendee may recover damages resulting from trespass. * * * Indeed the vendee must bear the losses due to fires or the elements. * * * He must bear the deterioration. He has an insurable interest. He is entitled to benefits that may accrue. His interest is an estate of inheritance. He is clothed with the indicia of ownership to the same extent as if he had taken a deed and given a purchase-money mortgage. The balance of the purchase money is treated as a part of the personal estate of the vendor and goes to his personal representative, but the interest of the vendee is regarded as real estate passing to his heirs and not to his personal representative." (Asterisks indicate the citation of supporting cases.)

In one of our latest cases, First & Am. Nat. Bank v. Whiteside, 207 Minn. 537, 543, 292 N. W. 770, 774, we said:

"The relationship [between the vendee and vendor] was similar to that created by mortgage or conditional sale, the beneficial interest being in the vendee and the security interest in the vendor."

S. R. A. cites and relies upon such cases as N. P. R. Co. v. Traill County, 115 U. S. 600, 610, 6 S. Ct. 201, 204, 29 L. ed. 477, 480, holding:

"If the assessment of these taxes is valid and the proceedings well conducted, the sale confers a title paramount to all others, and thereby destroys the lien of the United. States for the costs of surveying these lands. If, on the other hand, the sale would not confer such a title, it is because there exists no authority to make it.

"At all events, the holder of the equitable title to these lands has a right to prevent a sale which would have the effect of impeding the United States in the assertion of the right to them until these costs are paid.

"We are aware of the use being made of this principle by the companies, who, having earned the lands, neglect to pay these costs in order to prevent taxation." But, continued the court, "The remedy lies with the Congress and is of easy application * * * The courts can do no more than declare the law as it exists."

We do not believe that these cases are helpful in the situation here presented, since they are founded upon the theory that a tax title, once acquired, divests all interests and rights, no matter by whom possessed. Minn. Const. art. 9, § 1, dealing with the power of taxation, declares that "public property used exclusively for any public purpose shall be exempt from taxation." Obviously, the state's school and swamplands come within that class. But as soon as any such land is sold, usually under long-term payments, the purchaser's land is listed for taxation (as of May 1 after the

purchase) and taxed as other real estate. His down-payment interest in the land may be, and usually is, only a small part of the purchase price, with the balance payable in long-time installments. If he fails to meet the tax burden, anyone may acquire the state's rights at the tax sale or by taking an assignment of the taxes. Upon completion of the usual procedure, as in other cases, the tax certificate holder steps into the shoes of the original purchaser and may complete the performance of the original purchaser and thereby acquire the property. Minn. St. 1941, § 92.51 (Mason St. 1927, § 6323). Practically the same procedure is followed in cases where the land has been sold under contract by railroads. *Id.* § 272.21 (§ 2221). In either event, the tax title holder becomes in law an assignee of the rights of the original purchaser. As such, his tax burdens remain, and his rights and interests are exactly the same as those of other landowners. If there be tax default where no one is willing to take over the tax interests of the state, the practice is to cancel the contract. If it be land owned by the state, all taxes are cancelled and the land reappraised and sold anew.

■ In North Dakota the county is the agency through which the state collects its real estate taxes. Thus the procedure there is like our own. 6 Dunnell, Dig. § 9124, and cases under notes. In the recent case of State v. Sheridan County, .... N. D. ....., 6 N. W. (2d) 51, 54-55, it was held:

*"The mortgage* held by the Board of University and School Lands *was a lien prior to all general taxes,* and any lien or estate that might result from or be based upon such taxes. *Nevertheless, the land was subject to taxation, and it was the duty of the county officers to cause taxes to be assessed against such land the same as against other property subject to taxation.* If the taxes were not paid, and became delinquent, it became the duty of such officers to cause the land to be sold at tax sale, and if there were no bidders to bid the same in for, and in the name of, the county. The county had the right to sell and assign the certificate of sale, and if no redemption were made the county had the right to have

issued to it a tax deed, after proceedings had as prescribed by law." (Italics supplied.)

And further, in respect to the efficacy of a tax deed, the court said:

"Plaintiff [the state] may foreclose such mortgage. But the county may pay the mortgage, or in case of foreclosure, it may make redemption. The county may also sell the land in the manner prescribed by law, and the purchaser will have the right to pay off the mortgage, or in case of a foreclosure, to make redemption."

We can see no distinction in principle between the tax methods employed in our state in respect to state school and swamplands and the state of North Dakota's first mortgage to its Board of University and School Lands. It must be constantly borne in mind that the purchaser of property, whether from the state or the national government, must share the normal tax burdens along with other property owners and upon the same basis.

. We have not overlooked such cases as United States v. City of Milwaukee, 100 F. 828, and other like cases cited by counsel. The holding there was, as in the other cases cited and relied upon, that as long as the government retains the legal title as security for the payment of any part of the purchase money the land is not subject to taxation. Having disposed of the land grant cases, upon which the others are founded, we think it naturally follows, insofar as S. R. A.'s claim to tax immunity goes, that such cases, which are largely those of lower federal courts, must fall with them.

· As to State v. Itasca Lbr. Co. 100 Minn. 355, 111 N. W. 276, this court placed its decision upon the authority of the Milwaukee case and the other cases there cited. The only question presented there was summarized by the court in this fashion (100 Minn. 357, 358, 111 N. W. 277):

"The presentation of the scrip, with an application to locate it upon certain land, gave the applicant the preference over other

subsequent claimants of the land; but, until the application was approved and acted upon by the commissioner, the applicant acquired no interest, legal or equitable, in the land as against the United States."

Here, under our law, there can be no doubt that S. R. A. has not only a contractual *interest* in the property, but also, by virtue of its contract, the *equitable title* thereto, a right of the same magnitude as if an outright grant had issued and a purchase money mortgage had been given to secure the unpaid balance. It is equally clear that, so far as the federal government's interests and rights are concerned in these tax proceedings, no claim of the state is made or threatened. *Cf.* City of New Brunswick v. United States, 276 U. S. 547, 48 S. Ct. 371, 72 L. ed. 693.

Another reason why we think S. R. A. should not be allowed to escape its tax burden is that it is not in position to champion the federal government's tax immunity. The United States is not a party. It has not been impleaded, nor has it made any effort to come into the case. That it is capable of defending and protecting its own rights of immunity, if any are threatened, no one can doubt. It is S. R. A.'s property that is taxed, not that of its vendor.

S. R. A.'s claim is somewhat similar to that involved in the recent case of Ex parte Kumezo Kawato, 317 U. S. 69, 70, 63 S. Ct. 115, 116, 87 L. ed. . . . . . There the question was whether a resident alien who had suffered injuries while engaged in the performance of his duties on a vessel and who sought allowance for maintenance and cure could maintain an action against the claimants of the vessel, who asserted, and it was admitted, that this country was at war with Japan, and that, since the alien was a native of that country and an enemy alien, "therefore [he] had no 'right to prosecute any action in any court of the United States during the pendency of said war.'" The trial court granted a motion to abate the action on that ground, and the Supreme Court reversed, taking the view that (317 U. S. 74):

"In asking that the rights of resident aliens be abrogated in their behalf, private litigants in effect seek to stand in the position of government. But only the government, and not the private individual, is vested with the power to protect all the people, including loyal aliens, from possible injury by disloyal aliens. If the public welfare demands that this alien shall not receive compensation for his work or payment for his injuries received in the course of his employment, the government can make the decision without allowing *a windfall to these claimants.*" (Italics supplied.)

Here, as much as in that case, S. R. A. should not be allowed "a windfall," as obviously it would be were its position to be sustained. *Cf.* State v. ·Casualty Mut. Ins. Co. 213 Minn. 220, 6 N. W. (2d) 800.

Finding No. 13, so-called, was not within the stipulated facts. It was inserted by the court on its own motion. It is without support as a finding of fact and amounts to no more than a conclusion of law. The facts being without dispute otherwise, it may be stricken as irrelevant to the issues.

Order reversed.

