## GRAPHIC ARTS EDUCATIONAL FOUNDATION, INC., v. STATE.[1]

August 7, 1953.

Nos. 35,878, 35,879.

*Donald O. Wright* and *Thoreen, Thoreen & Lawson,* for appellant.
*Michael J. Dillon,* County Attorney, and *Edward J. Shannon,*
Assistant County Attorney, for respondent.

[1]Reported in 59 N. W. (2d) 841.

*John A. Goldie,* for H. C. Schaitberger, Kenneth Dawson, and Fred Diede, *amici curiae.*

DELL, CHIEF JUSTICE.

This appeal involves two actions brought pursuant to M. S. A. 278.01, to have certain improved property located in the city of Minneapolis declared exempt from real estate taxes for the years 1948 and 1949, on the basis that during such years petitioner maintained and operated a seminary of learning and educational institution on such property. The actions are identical except as to the taxable years involved and were therefore, pursuant to stipulation, consolidated for trial. This opinion and disposition applies to both cases.

The trial court made findings of fact and conclusions of law holding that the trade school operated by petitioner on the property involved was not a seminary of learning nor an educational institution within the meaning of the tax exemption provisions of the Minnesota constitution and the applicable statutes and that therefore the property was not tax exempt. The petitioner appealed from the order denying its alternative motion for amended findings and conclusions or a new trial. The sole issue presented by this appeal is whether the educational institution owned and operated by the petitioner is a "seminary of learning" under the constitution and laws of this state so as to entitle the property used by it to be classified as exempt from taxation.[2]

Only that part of the order denying a new trial is reviewable on this appeal.[3] However, on such review, any finding of fact may be challenged as not sustained by the evidence.[4]

---

[2] Appearance and arguments as *amici curiae* were made in the trial court and on this appeal in support of the state by H. C. Schaitberger, Kenneth Dawson, and Fred Diede, as citizens and taxpayers and as officers of Allied Printing Trades Council of the city of Minneapolis, a labor union association.

[3] In re Petition of S. R. A. Inc. 213 Minn. 487, 7 N. W. (2d) 484; In re Estate of Wilson, 223 Minn. 409, 27 N. W. (2d) 429.

[4] Schaedler v. New York L. Ins. Co. 201 Minn. 327, 276 N. W. 235.

From the unchallenged findings of fact, it appears that petitioner, a Minnesota corporation, was organized for the primary purpose of establishing and maintaining educational, vocational, and technical training in the crafts and trades of the printing industry. Petitioner is a subsidiary of Graphic Arts Industry, Inc., an association of business firms and business individuals engaged in various branches of the graphic arts industry. Petitioner received record title to the property involved from Graphic Arts Industry, Inc., without the payment of any consideration. Approximately half of such property was used to house the vocational or trade school operated by petitioner, which school offered instruction in courses relating to the printing trade. This school offered full-time day courses extending over a period of 35 to 75 weeks and also limited night courses, one night per week.

■ Petitioner challenges two findings of fact as actually being conclusions of law. These findings are to the effect that petitioner's school is not an "educational institution" or a "seminary of learning" within the meaning of the Minnesota constitution and statutes. There appears to be merit in petitioner's contention; however, the error was without prejudice. M. S. A. 546.27 requires that the facts found and the conclusions of law shall be separately stated.[5] The purpose of this section is to abolish the doctrine of "implied" findings and to make definite and certain what is decided.[6] The important requirement of this section is that sufficient, ultimate facts be stated to legally support the conclusions of law reached. Literal compliance with the statutory requirement is not necessary.[7] For example, failure to comply with the statute may be cured by a subsequent memorandum stating the facts found and the conclusions of law separately.[8] Thus, a fact found by the court, although

[5]The material parts of this section are superseded by similar provisions of Rule 52.01 of the Rules of Civil Procedure. However, these findings and conclusions were made December 28, 1951, and the rules did not become effective until January 1, 1952. See, Rule 86.01.

[6]Fredsall v. Minnesota State L. Ins. Co. 207 Minn. 18, 289 N. W. 780.

[7]See, Alger v. United States (7 Cir.) 171 F. (2d) 667.

[8]Trones v. Olson, 197 Minn. 21, 265 N. W. 806, 103 A. L. R. 1419.

expressed as a conclusion of law, will be treated upon appeal as a finding of fact.[9] Similarly, the labeling of a conclusion of law as a "finding of fact" is not determinative of its true nature, and it need not be considered a finding by the appellate court.[10] If the conclusions of law, however designated, are supported by the findings of fact, they will be affirmed. The important consideration in cases of improper designation is not to permit a conclusion of law, in the absence of a finding of fact, to support the ultimate decision.[11] Here the findings of fact and conclusions of law, although perhaps not properly designated, were separately stated, and all the conclusions of law, however designated, are adequately supported by properly designated findings of fact.

Petitioner specifically challenges two other findings as not being supported by the evidence.[12]

The court, in establishing the identity and describing the background of the petitioner and the property involved, referred to Graphic Arts Industry, Inc., as a "business corporation," whereas, petitioner contends, the uncontroverted evidence is that this corporation is a "non-profit" corporation. The articles of incorporation of Graphic Arts Industry, Inc., which are in evidence, provide that no pecuniary profits shall be paid its members, and there was testimony that this organization was a "non-profit corporation." However, there was also testimony by petitioner's vice president,

[9]Cushing v. Cable, 54 Minn. 6, 55 N. W. 736; Missouri, Kansas & Texas Trust Co. v. McLachlan, 59 Minn. 468, 61 N. W. 560; Town of Campbell v. Waite, 84 Minn. 254, 87 N. W. 782; Ostroot v. N. P. Ry. Co. 111 Minn. 504, 127 N. W. 177; Pavelka v. Pavelka, 116 Minn. 75, 133 N. W. 176.

[10]Bendix Home Appliances, Inc. v. Radio Accessories Co. (8 Cir.) 129 F. (2d) 177; Lambert Lbr. Co. v. Jones Eng. & Const. Co. Inc. (8 Cir.) 47 F. (2d) 74.

[11]See, Newman v. Newman, 68 Minn. 1, 70 N. W. 776.

[12]Petitioner's sole assignment of error is that "The Court erred in denying petitioner's motion for amended findings of fact, conclusions of law and order for judgment, or a new trial." Our consideration of the findings challenged is not to be construed as an approval of the failure to specifically assign such findings as error. See, Raymond v. McKenzie, 220 Minn. 234, 19 N. W. (2d) 423.

who was also an officer of Graphic Arts Industry, Inc., that Graphic Arts Industry, Inc., was a "business association. * * * Of business firms and business individuals * * *." It is fair to assume that the trial court had reference to such a designation when using the term "business corporation." Moreover, petitioner presents no arguments to show the materiality or prejudice of such a designation. The profit or nonprofit character of the institution is immaterial to a determination of whether or not an institution is a "seminary of learning."[13]

The second finding challenged by petitioner is the finding that the same knowledge and information acquired by graduates of petitioner's school could have been acquired by working in a print shop. Petitioner contends that the only evidence presented on this matter established that, while the mechanical skills of the trade could be acquired by working in a print shop, such knowledge would be less satisfactory than that obtained by students at petitioner's school and, furthermore, could only be obtained over a longer period than petitioner's course and then only by taking certain outside courses covering the so-called "related academic subjects."

The evidence definitely establishes that over a period of time a person working in a commercial print shop *under the master and apprentice act* (M. S. A. c. 178) would acquire the same amount of knowledge and information as a graduate of petitioner's school. There were various estimates of the period of time necessary to acquire this knowledge. One witness for the state, a former instructor at the school and at present a foreman in a commercial print shop, estimated that this same knowledge could be acquired in a year and a half or approximately the same length of time as petitioner's 75-week course. This witness was of the opinion that a person doing linotype-intertype work and taking related subjects

[13]State v. N. W. College of Speech Arts, Inc. 193 Minn. 123, 258 N. W. 1; Ramsey County v. Stryker, 52 Minn. 144, 53 N. W. 1133. For the distinction between a purely "charitable institution" and a "seminary of learning," see State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

under an apprenticeship agreement would learn "at least as much" as a student receiving a certificate of completion from petitioner's school. Most of the witnesses testified that work in a print shop would require supplementation by correspondence or other studies of certain subjects, as required by the master and apprentice act, to equal the learning acquired at the school. However, one of petitioner's principal witnesses, the director of education at the school, testified that over a period of time it would be possible to get the same amount of knowledge as acquired by a student at the school "by simply working in a shop as an apprentice." The witness did not specifically indicate that "as an apprentice" meant including the outside studies, as required by the master and apprentice act. It is reasonable to assume that, similarly, what the trial court meant by "working in a printing shop" was working as an apprentice under the provisions of the master and apprentice act. While the finding could well have been more specific, it cannot be held erroneous.

In any event, the question presented is conclusively disposed of by a finding which is unchallenged on this appeal and which is amply sustained by the evidence. The court found: "That the course of instruction offered and given by petitioner at its said school does not provide any substantial part of the branches of learning and educational training which are furnished by the various publicly supported schools." The language of this finding is almost identical with the language used by this court in the recent case of State v. N. W. Vocational Institute, Inc.[14] This is the most recent of a series of cases construing the tax exemption benefits afforded "seminaries of learning."

Minn. Const. art. 9, § 1, and its statutory counterpart, M. S. A. 272.02, use identical language in exempting from taxation all "academies, colleges, universities, and all *seminaries of learning.*" (Italics supplied.)[15] These provisions are construed less strictly

---

[14]232 Minn. 377, 380, 45 N. W. (2d) 653, 655.

[15]The constitutional provision, however, is self-executing and needs no statute to give it force or effect. State v. Bishop Seabury Mission, 90 Minn. 92, 96, 95 N. W. 882, 884.

than other taxation exemption provisions since the policy of the state has consistently been to encourage the establishment of private educational institutions.[16] However, we have emphasized that by merely designating an institution as a school, college, or educational institute does not confer tax exemption upon it.[17] The basis of all tax exemption is the accomplishment of public purposes; an exemption is not granted for the purpose of favoring particular persons or corporations at the expense of taxpayers generally.[18] This is also true in the case of the particular tax exemption granted "seminaries of learning."[19]

The accomplishment of public purposes in the case of seminaries of learning is their providing of—

"* * * some *substantial part* of the educational training which otherwise would be furnished by the various publicly supported schools, academies, colleges, and seminaries of learning and which, to such extent, thereby lessen the tax burden imposed upon our citizens as the result of our public educational system." (Italics supplied.) State v. N. W. Vocational Institute, Inc. 232 Minn. 380, 45 N. W. (2d) 655.

This "substantial part" is not satisfied by merely showing that the limited courses offered by a private institution are also offered in public educational institutions. To so hold would be to exempt almost every private training and educational program since the subjects offered currently in the public educational system are of such variety as to satisfy almost any conceivable learning desire. Yet, obviously, all offerings of specialized training are not tax

[16]State v. Carleton College, 154 Minn. 280, 191 N. W. 400; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

[17]State v. N. W. Vocational Institute, Inc. 232 Minn. 377, 45 N. W. (2d) 653; State v. N. W. College of Speech Arts, Inc. 193 Minn. 123, 258 N. W. 1.

[18]State v. Ritschel, 220 Minn. 578, 20 N. W. (2d) 673, 168 A. L. R. 274; State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. (2d) 642.

[19]State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

exempt.[20] To qualify as a "seminary of learning" an institution must offer some kind of a *general educational program.* Such program need not be as broad as that offered by the public educational system. It may feature particular subjects or be directed toward preparing its students for certain vocations, but it cannot solely train these students in the mechanical aptitude of a single trade and thereby qualify as a "seminary of learning." It must offer enough of a variety of general academic subjects to qualify as a reasonable substitute for a usual program of courses pursued by a student at the comparative level of the public system.

Thus, in County of Hennepin v. Grace[21] this court approved the exemption of a parochial school teaching "branches of learning usually taught in the common schools of this state."[22] In Ramsey County v. Stryker[23] we set aside a tax levy against a privately owned and operated school for girls and young ladies that obviously offered a *general education* to its students. In State v. Bishop Seabury Mission[24] we approved the exemption of two institutions, Shattuck School and Seabury Divinity School, clearly offering *general educational facilities.* We there spoke in terms of general education in making reference to the articles of the Northwest Territory, which provided that—

"religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

In State v. Carleton College[25] we approved exemption of a higher

---

[20]See, State v. N. W. College of Speech Arts, Inc. 193 Minn. 128, 258 N. W. 3, *supra;* State v. N. W. Vocational Institute, Inc. 232 Minn. 380, 45 N. W. (2d) 656, *supra.*

[21]127 Minn. 503, 8 N. W. 761.

[22]The majority of the court was apparently of the opinion that such an institution also qualified as a public charity.

[23]52 Minn. 144, 53 N. W. 1133.

[24]90 Minn. 92, 95 N. W. 882.

[25]154 Minn. 280, 191 N. W. 400.

institution of learning obviously offering a wide variety of *general educational pursuits.*

The case of State v. N. W. College of Speech Arts, Inc.,[26] dealt with an institution organized primarily to offer instruction in all phases of speech and music. Here was an example of an institution specializing in a few branches of learning. However, the evidence relied upon by this court in deciding that the institution was a "seminary of learning," and thus tax exempt included testimony that (193 Minn. 124, 258 N. W. 1):

"* * * 'The backbone of the institution is a college course in speech * * *. We require a high school graduation for entrance to it.' * * * A four-year course would include from forty to fifty courses."

That institution had a department of English offering regular college subjects, a department of education with subjects for those preparing to teach, and a department of dramatic art with special instruction in play production and kindred subjects. The state issued a special provisional teaching certificate to graduates offered employment by the public school system. It is apparent that the training offered its students was broad and extensive, not merely covering the bare rudiments of its field but giving general equipment and knowledge, similar to that offered by public educational institutions of a college level, to a student specializing in speech or music. There can be no question that the scope of education offered by that institution was notably broader than that offered by the institution now before us.

The recent case of State v. N. W. Vocational Institute, Inc.,[27] presented a situation quite similar to the situation now before us. The institution there offered training in the operation, repair, and maintenance of radio and television equipment. The trial court found that the school did not teach the "several branches of learning" offered by public schools and did not teach any academic subjects. We emphasized that the limited training offered by that insti-

[26]193 Minn. 123, 258 N. W. 1.
[27]232 Minn. 377, 381, 382, 45 N. W. (2d) 653, 656.

tution constituted only a mechanical approach to the fields with which it dealt. We pointed out that the institution "did not offer a continuous or integrated program which included *general education* as well as technical education and training"; that there was no instruction "in the *several branches of learning,* including a study of history, mathematics, science, English, or foreign languages"; that it was a "specialized school not teaching the same *general subjects* which are taught" in "elementary school, high school, or college"; that it "was not an institution of *general education";* and that a graduate of the school "was not properly educated from the standpoint of a *general education* for social usefulness in society." (Italics supplied.)

■ In the case now before us the evidence discloses that the training offered might well be termed a "mechanical approach" to the printing field. There were no educational prerequisites. The principal courses dealt with the mechanical features of various printing operations. There was evidence that the so-called "related academic subjects" of the trade are confined to the limited portions of the general subjects which relate to the printing trade. Thus, the English, known as *printer's English,* consists merely of word division, spelling, proof reading, punctuation, and when to spell out a numeral and when to use a numeral. Mathematics, or "printer's arithmetic," consists merely of a study of type measurements, the number of M's to a line or a page, converting inches to picas, and learning how to cut paper to get the maximum pieces of stock. *Chemistry* consists merely of the methods of melting used lead or type metal and of cleaning and toning the same for re-use and also the handling of ink. Such related courses are clearly not courses in the general subjects by which they are designated. Petitioner's witness, a consultant in industrial education of the board of education of Minneapolis, testified that the so-called trade-related subjects could not be used for a credit rating under the public educational system because they were strictly trade-related subjects and did not come under the heading of general English or regular high-school mathematics. The evidence amply supports the finding that

the petitioner's school does not offer a "substantial part" of the branches of learning and educational training which are furnished by the various publicly supported schools and this finding compels the conclusion that the institution is not a "seminary of learning" within the meaning of the tax-exemption provisions of the state constitution and laws.

Trade schools, such as the one we have here, serve a useful purpose and fill a definite need. These schools not only aid the individual student but also indirectly are beneficial to society in that they equip young men and women for more useful lives. But this is not the "accomplishment of public purposes" contemplated by the tax exemption provisions. To entitle an institution to enjoy the benefits of tax exemption there must be the offering of a substantial part of the *general education* ordinarily given by publicly supported schools with the resulting lessening of the financial burden on the taxpaying public.

The orders appealed from in both cases are affirmed.

Affirmed.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.