*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1974**

In the Matter of:

Colleen Marie Siverling, petitioner,
Respondent,

vs.

Dominic Andrew Bjerke,
Appellant.

**Filed August 15, 2016
Affirmed
Smith, Tracy M., Judge**

Olmsted County District Court
File No. 55-FA-15-2918

Matthew S. Johnson, Rochester Business Law, LLC, Rochester, Minnesota; and David L. Liebow, Restovich Braun & Associates, Rochester, Minnesota (for respondent)

Christopher R. Braden, J. Scott Braden, P.A., Faribault, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Appellant Dominic Andrew Bjerke appeals the district court's issuance of an order for protection (OFP). Bjerke contends that the issuance of the OFP should be reversed because the district court did not specifically find that he personally committed an act of domestic abuse against the parties' minor child and because the evidence presented at the hearing is insufficient to sustain the OFP. Because the district court's findings are sufficient and the record supports the issuance of an OFP against Bjerke, we affirm.

## FACTS

Bjerke and respondent Colleen Marie Siverling (mother) are the parents of a four-year-old child, C.M.S. Bjerke and mother live separately. C.M.S. was in Bjerke's custody from May 1 to May 3, 2015. After receiving C.M.S. back into her custody on May 3, mother noticed bruising on C.M.S.'s back and buttocks. Bjerke later sent mother an e-mail stating that the bruising happened when C.M.S. fell down three stairs on the deck and onto the ground below. The following day, mother applied for an OFP on behalf of C.M.S. and the district court issued an emergency ex parte OFP. The district court also appointed a guardian ad litem to investigate potential domestic abuse.

The district court held an evidentiary hearing to determine if an OFP should be issued. Both parties testified and offered testimony of supporting witnesses, and the district court received seven photographs into evidence showing the bruising on C.M.S.'s back and buttocks. Mother offered testimony from herself, her mother (C.M.S.'s maternal

grandmother), the court-appointed guardian ad litem, and a physician. Bjerke offered testimony from his wife, his grandmother, two friends, R.R. and G.O., and himself.

Mother testified that she first discovered the bruising on C.M.S. shortly after she and Bjerke exchanged C.M.S. Mother stated that she took photos of the bruising and brought C.M.S. to the emergency room. Mother testified that when she asked C.M.S. how the bruising happened, C.M.S. responded that Bjerke did it.

C.M.S.'s grandmother testified that she dropped C.M.S. off with Bjerke on May 1. According to her testimony, C.M.S.'s demeanor that day was "typical" and there were "no bruises or marks at that time." C.M.S.'s grandmother testified that her memory of the events was consistent with mother's and that she heard C.M.S. tell the guardian ad litem that Bjerke caused the bruising.

The guardian ad litem testified that she has served in that role for 18 or 19 years and that her investigation led her to have concerns about Bjerke's parenting style. The guardian ad litem testified that C.M.S. may have fallen down the stairs, but she also testified that "based on all the information" she believed that "more happened to [C.M.S.]" She stated that she was concerned Bjerke's parenting style put C.M.S. "at risk of some type of harm" and that C.M.S. behaved in a way that was consistent with a child who has been disciplined physically. The guardian ad litem also testified that she has "great concerns" regarding C.M.S.'s wellbeing with Bjerke and that another of Bjerke's children told her that C.M.S. "gets spankings" from Bjerke. On further questioning from the district court, the guardian ad litem testified that C.M.S. told her that his dad caused the bruising.

Mother's final witness was the physician who examined C.M.S.'s bruising on May 4. According to the physician's evaluation, C.M.S.'s injuries were inconsistent with falling down the stairs. The physician reasoned that the lack of family history of "any type of bleeding disorder," the extensive bruising that reflected the tightening of skin to avoid injury from repeated striking, and the fact that C.M.S. was wearing diapers when he allegedly fell led him to conclude that the injury was "consistent with an inflicted injury." The physician further explained that "[s]omeone caused [the injury] to this child since there is no other adequate history to explain an accident." The physician stated that he believed that "there was a questionable area of a finger outline" on C.M.S.'s buttocks. On cross-examination, the physician acknowledged that he "had no way of knowing who caused the injuries."

R.R., Bjerke's first witness, testified that he had a cookout with Bjerke on May 1, and that he did not see Bjerke discipline or hit C.M.S. R.R. further testified that he has never seen Bjerke hit a child. R.R. also stated that C.M.S. may have fallen down while helping stack firewood and that C.M.S. and the other children at the cookout had a "pig pile" during the evening.

Bjerke's grandmother testified that she spent several hours with Bjerke and C.M.S. on May 2. She testified that C.M.S. fell several times while playing at the park. She further testified that she did not see Bjerke hit or injure C.M.S. that day and agreed that she has never seen him "inappropriately discipline his children."

Bjerke's wife testified that she did not see Bjerke physically discipline or hit C.M.S. at any time during May 1, May 2, or May 3. According to Bjerke's wife, Bjerke left the

4

house around 7:30 a.m. on May 3 for a service project and was gone until they later met to exchange C.M.S. with mother.  Bjerke's wife stated that after C.M.S. finished a timeout on May 3, he ran across the deck to join the other children playing in the yard and tripped and fell down three stairs on his backside.  She testified that she later bathed C.M.S. and noticed the beginnings of bruising but forgot to tell mother about the bruising when they exchanged C.M.S.  According to Bjerke's wife, Bjerke e-mailed mother about the fall and bruising as soon as they got home.

Bjerke's friend G.O. testified that on the morning of May 3 he and Bjerke drove to Houston, Minnesota, for a club service project and returned later that evening.

Bjerke testified that he did not physically harm C.M.S. and denied ever intending to cause fear in C.M.S.  Bjerke also testified that he had no reason to suspect his wife of hitting C.M.S. during the period from May 1 through May 3.  Bjerke agreed with G.O.'s testimony that they spent most of May 3 together in Houston.

Following the hearing, the district court filed an order granting mother's petition for an OPF on behalf of C.M.S. against Bjerke.  The district court concluded:

> [Mother] has demonstrated by a preponderance of the evidence that an OFP should be issued against [Bjerke].  Domestic abuse occurred while C.M.S. was in the custody and care of Bjerke between May 1-3, 2015 which resulted in injury to C.M.S. as indicated by bruising on the waist, lower back, and buttocks.

Bjerke appeals.

### D E C I S I O N

"The decision to grant an OFP under the Minnesota Domestic Abuse Act . . . is within the district court's discretion." *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn.

App. 2009) (quotation omitted).  We will reverse the issuance of an OFP only if the district court abused its discretion.  *Braend v. Braend*, 721 N.W.2d 924, 926-27 (Minn. App. 2006).

*Findings of fact*

Bjerke contends that the district court could not issue an OFP because it did not specifically find that he personally committed acts of domestic abuse against C.M.S.  A district court may issue an OFP if domestic abuse has been inflicted upon a family or household member by a family or household member.  *See generally* Minn. Stat. § 518B.01, subds. 2, 4, 6 (2014).  A district court must make a finding of domestic abuse before issuing an OFP.  *See Mechtel v. Mechtel*, 528 N.W.2d 916, 921 (Minn. App. 1995) (concluding that findings were insufficient when the district court "made no written or oral findings, and filled in the blank space for findings with a statement that it was not making a determination of guilt or any violation"); *Andrasko v. Andrasko*, 443 N.W.2d 228, 230 (Minn. App. 1989) (concluding that the district court "erred by failing to make findings regarding domestic abuse").

Bjerke argues that it is not enough to find that domestic abuse occurred, but that the district court must also find that *he* committed the domestic abuse.  He relies on *Schmidt ex rel. P.M.S. v. Coons*, where the supreme court reversed an OFP because the district court had not found that the minor child was a victim of the domestic abuse.  818 N.W.2d 523, 525, 529 (Minn. 2012).  We need not address the viability of a *Schmidt*-based argument, however, because on this record we conclude that the district court did find, albeit implicitly, that Bjerke committed domestic abuse of C.M.S.

6

It is true that the district court did not include in its findings of fact that Bjerke committed certain acts that would support the legal conclusion that he committed domestic abuse. But the district court concluded:

> [Mother] has demonstrated by a preponderance of the evidence that an OFP should be issued against [Bjerke]. Domestic abuse occurred while C.M.S. was in the custody and care of Bjerke between May 1-3, 2015 which resulted in injury to C.M.S. as indicated by bruising on the waist, lower back, and buttocks.

A finding of fact incorrectly labeled as a conclusion of law will be treated as a factual finding despite its incorrect label. *Dailey v. Chermak*, 709 N.W.2d 626, 631 (Minn. App. 2006) (citing *Graphic Arts Educ. Found., Inc. v. State*, 240 Minn. 143, 145-46, 59 N.W.2d 841, 844 (1953)), *review denied* (Minn. May 16, 2006). From the district court's conclusion of law, we are able to discern the mislabeled "finding" that Bjerke committed the domestic abuse of C.M.S. *See id.* The two sentences read together convey that Bjerke was the perpetrator of the domestic abuse, especially in light of other findings in the district court's order, including that the guardian ad litem was concerned about Bjerke's parenting and observed C.M.S. to be hesitant and minimally affectionate toward Bjerke, consistent with the behavior of other children who have been abused. In addition, the district court necessarily rejected Bjerke's explanation that C.M.S.'s injuries were the result of an accident.

Although sparse, there are adequate "findings" in the district court's order to support its conclusions of law, and we therefore perceive no abuse of discretion. *C.f. Mechtel*, 528 N.W.2d at 921; *Andrasko*, 443 N.W.2d at 230. But we strongly caution against the practice of summarizing the court's determination without making findings of fact as to the

7

credibility and weight of the evidence when warranted. *See* Minn. R. Civ. P. 52.01 (stating that "[i]n all actions tried upon the facts without a jury . . . , the [district] court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment"). When the evidence presented at an evidentiary hearing supports the issuance of an OFP, the district court's order should include particularized findings of fact regarding the occurrence, victim, and perpetrator of domestic abuse. *See Andrasko*, 443 N.W.2d at 230; *see also* Minn. Stat. § 518B.01, subd. 2(a)(1)-(2) (defining "domestic abuse").

### *Sufficiency of the evidence*

Bjerke also contends that the record fails to support the issuance of an OFP. A district court abuses its discretion when it issues an OFP that lacks evidentiary support. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004); *see Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 490 (Minn. App. 2005) (concluding that the district court erred when there was no evidence to support its conclusion that domestic abuse occurred). An OFP lacks evidentiary support when the findings are clearly erroneous, contrary to the weight of the evidence, or not supported by the evidence as a whole. *Gada*, 684 N.W.2d at 514. We review the record in the light most favorable to the district court's findings. *Pechovnik*, 765 N.W.2d at 99. On appeal from the issuance of an OFP, we "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Gada*, 684 N.W.2d at 514.

A district court is authorized to issue an OFP to "restrain the abusing party from committing acts of domestic abuse." Minn. Stat. § 518B.01, subd. 6(a)(1). "Domestic

abuse" includes "(1) physical harm, bodily injury, or assault"; or "(2) the infliction of fear of imminent physical harm, bodily injury, or assault" that is "committed against a family or household member by a family or household member." *Id.*, subd. 2(a)(1)-(2). The existence of domestic abuse must be established by a preponderance of the evidence. *Oberg v. Bradley*, 868 N.W.2d 62, 64 (Minn. App. 2015).

Bjerke argues that there is no evidence or testimony that establishes his infliction of "physical harm" or "bodily injury" upon C.M.S. *See* Minn. Stat. § 518B.01, subd. 2(a)(1). We disagree. Mother and C.M.S.'s grandmother testified that C.M.S. was injury-free when they placed him in Bjerke's care on May 1 and that mother discovered the bruises on C.M.S.'s back and buttocks after C.M.S. was returned to her on the evening of May 3. The physician who examined C.M.S. shortly after mother discovered his injuries testified that, for several reasons, C.M.S.'s injuries were inconsistent with falling down the stairs but were consistent with "an inflicted injury." The physician further explained that "[s]omeone caused [the injury] to this child since there is no other adequate history to explain an accident." The physician stated that based on his examination he believed that "there was a questionable area of a finger outline." The guardian ad litem testified that she was concerned that Bjerke's parenting style put C.M.S. "at risk of some type of harm" and that C.M.S. behaved in a way that was consistent with a child who had been disciplined physically. And the guardian ad litem stated that another of Bjerke's children told her that C.M.S. "gets spankings" from Bjerke. Finally, mother, C.M.S.'s grandmother, and the

guardian ad litem all testified that C.M.S. reported that Bjerke was responsible for the bruising.[1]

The issuance of the OFP against Bjerke indicates that the district court implicitly credited the testimony of the witnesses proffered by mother, *see Pechovnik*, 765 N.W.2d at 99 (noting that the district court's findings "implicitly indicate[d]" that it found certain evidence credible), and we defer to the district court's credibility determinations, *see Gada*, 684 N.W.2d at 514. The credited testimony supports the inference that Bjerke caused the bruising on C.M.S. and the district court's conclusion that an OFP was warranted against Bjerke. *See* Minn. Stat. § 518B.01, subds. 2(a)(1), 6(a)(1). Because the OFP does not lack evidentiary support, the district court did not abuse its discretion. *See Gada*, 684 N.W.2d at 514.

**Affirmed.**

---

[1] Bjerke does not challenge these statements as inadmissible hearsay on appeal.